THORNAL, Justice.
Appellant, The Surf Club, which was defendant below, seeks reversal of a declaratory decree in a proceeding brought by the appellees to determine their voting rights in the appellant club.
The point to be determined is whether the appellees and those similarly conditioned enjoy the complete voting privileges that control the operations of the appellant club.
The Surf Club was chartered as a nonprofit Florida corporation in 1930. Si *385 multaneously Surf Hotel Corporation was incorporated as a corporation for profit. Surf Hotel Corporation erected a clubhouse, swimming pool and related buildings. This property was leased to The Surf Club. Substantially the same people apparently organized both the profit and non-profit corporations. In 1935 the Surf Hotel Corporation conveyed its properties to The Surf Club. The purchase price was to be paid by the establishment of what was known as “ownership units”. According to the bylaws of The Surf Club, accepted by a resolution of the stockholders of the Surf Hotel Corporation, a certificate for ten shares of stock of Surf Hotel Corporation was considered an ownership unit and referred to as such. The Surf Club issued no other certificate or evidence of such ownership units. Over the years The Surf Club has prospered, its property has become increasingly valuable and it is now generally recognized as one of the luxury social clubs of the lower East Coast of Florida.
At the time of the acquisition of the property of Surf Hotel Corporation, the corporation for profit, by The Surf Club, the non-profit corporation, the bylaws of The Surf Club were amended so as to establish three types of memberships; (a) regular members who enjoy full use and privileges of the club, (b) proprietors or founders who were regular members and who in addition held an ownership unit, and (c) season members who enjoy the privileges of the club upon their election for a particular season. The total of all the regular members are entitled to exercise forty-nine per cent of the voting strength at all club meetings. The proprietors or founders exercise fifty-one per cent of the total voting strength. Season members have no vote.
Sometime prior to January 1, 1955, ap-pellees, Motland and Van Aartsen, jointly acquired one “ownership unit”. 'Except as specifically stated hereafter, the owners of ownership units had no voting powers or any club privileges. The bylaws which were adopted when The Surf Club acquired its property from the Hotel Corporation contained the following significant provisions :
“a. Certificates for ten (10) shares of stock of Surf Hotel Corporation, or voting trust certificates equivalent thereto, shall be considered as an Ownership Unit, and is hereinafter so referred to.
******
“c. The Club shall have the right to redeem Ownership Units or fractions thereof at the rate of $3,000.00 per Unit, at any time, and when purchased by the Chib, such Ownership Unit may be held, resold or cancelled at the option of the Club. Any units or fractions thereof so purchased by the Club shall have all the rights herein specified.
“d. Ownership Units or fractions thereof not cancelled on or before January 1, 1955, shall have the exclusive right, on and after that date, to exercise the complete voting rights of the Club, at the rate of one vote per Ownership Unit. Fractional votes on this basis are hereby recognized.
******
“f. Except as herein provided, the owners of Ownership Units shall not be entitled to any voting powers or to any use or privileges of the Club.
“g. No sale, mortgage or other transfer or incumbrance of any substantial part of the Club’s property shall be made, nor shall this by-law be amended or rescinded, without the consent of the holders of sixty (60%) per cent of the then outstanding Units.” (Emphasis ours.)
Over the years The Surf Club in accordance with the bylaws has acquired 216 ownership units. These units have been held by the club but have never been can-celled. The appellees allege that they and *386 29 others hold a total of 30 oustanding ownership units.
The problem arises out of a meeting held on January 3, 1955, wherein it was proposed to amend the bylaws so as to revest all voting rights in the founders and regular members of The Surf Club. At this meeting The Surf Club voted its 216 own-nership units in favor of the amendment. Two individual holders of the ownership units voted for the amendment and two, including appellees who jointly own one unit, voted against the amendment. By their complaint, appellees contend that paragraph “g” of the bylaws quoted above required the approval of sixty per cent of the “outstanding units”. It is their position that when the club purchased ownership units, such units for all practical purposes became dormant and could not be voted as long as they were held by the club. On the other hand, the appellant contended that under paragraph “d” of the bylaws, the units held by the club were entitled to participate in the voting rights of the club inasmuch as they had never been cancelled.
The Chancellor agreed with the appellees and held that the attempt by The Surf Club to vote the 216 ownership units was null and void. Reversal of his decree is here sought.
An analysis of the position of the ap-pellees as reflected by their complaint below, and their briefs here, indicates that they contend that they and the 29 other individually held ownership units now represent the total voting rights of The Surf Club. The practical effect of the contention is that they would actually control all of the operations of the club. In their view they could vote its dissolution and liquidation. It is their position that as of January 1, 1955, they obtained vested interests in all of the assets of The Surf Club and that they are entitled to demand in exchange for their one ownership unit jointly held an amount equal to V&o of the value of the net assets of The Surf Club. This would be the ultimate effect of the holding of the Chancellor.
We must confess that the arrangement reflected by the bylaws is most unusual. However we must bear in mind that The Surf Club is purely a social club and a non-profit corporation. See Chapter 617, Florida Statutes, F.S.A. The provisions of the bylaws which were known to the stockholders of Surf Hotel Corporation when the arrangement was created became part of the contractual relationship between The Surf Club and the holders of ownership units which were in actuality evidenced merely by a certificate for ten shares of stock of Surf Hotel Corporation, the corporation for profit. Constituting a contract as it did, we must therefore look to the terms of the contract. If our. conclusions should appear strange when contrasted with traditional concepts of corporate management, we defend with the observation that a strange and unusual agreement was created by the parties at the outset. It is not our province to re-write the contract for them. The probability is that the peculiarity of the arrangement will forestall any value of this opinion as a precedent unless it be to signal avoidance of such anomalies by others.
Under paragraph “c” quoted above the club was given the privilege of purchasing the ownership units “at any time” for the sum of $3,000. By this paragraph it was expressly provided that any such ownership unit “may be held, resold or cancelled at the option of the Club. Any units or fractions thereof so purchased by the Club shall have all the rights herein specified.”
Under paragraph “d” of the above quoted bylaws, it was provided that ownership units "not cancelled on or before January 1, 1955” shall have the complete voting rights of the club.
Under these provisions which are as binding on appellees as they are on appellant, it will be noted that the club as an entity *387 preserved to itself, obviously for the benefit of the regular and proprietor members, the privilege of voting uncancelled membership units whenever ownership units were endowed with the right to vote. Appellees would liken the situation to one in which a corporation for profit acquires its own stock. In the contended analogy, stock taken into the corporate treasury becomes dormant and cannot be voted by the corporation itself absent specific statutory authority or possibly an expressed and unequivocal charter provision. If these ownership units were corporate stock and this were the orthodox corporation for profit, the position of the appellees would be well founded. Obviously, these ownership units are not corporate stock and The Surf Club is certainly not an orthodox corporation for profit. It seems clear from our examination of the record that this “ownership unit arrangement” was set up merely as a contractual device to enable The Surf Club to pay the purchase price for property that it acquired from the Surf Hotel Corporation. The contractual device necessarily included the provisions set up in the bylaws which brought the device into being.
With reference to paragraph “g” upon which appellees rely, it should be observed that the provision is that the bylaws cannot be changed or the property of The Surf Club disposed of without the consent of the holders of sixty per cent of the “outstanding tmits”. In view of the peculiar language of the bylaws involved, we make a distinction between units which are “not cancelled” and units which are “outstanding”. The expression “outstanding units” obviously refers to those individually held by persons such as appellees that are “outstanding” because they have not been reacquired by the club itself for the benefit of its members. While the units which are “not cancelled” may assert the voting rights in behalf of the members after January 1, 1955 (paragraph “d” bylaws), nevertheless, in view of the limitations of paragraph “g”, the bylaws cannot be amended unless sixty per cent of the “outstanding units” agree. Obviously, this requirement was inserted so that those individuals who continued tp hold “outstanding units” would be protected against any substantial change in the status of the club’s property or operating procedures.
With reference to the ultimate decree of the Chancellor we find that it was error to hold that the 216 ownership units held by The Surf Club could not be voted at the meeting for the amendment of the bylaws. The action of the club in voting these units was not null and void. At the same time the action taken at that meeting was ineffective for the reason that such action was “without the consent” of the holders of sixty per cent of the then “outstanding units”.
However, with reference to any matters other than those specifically decribed in paragraph “g” of Article VI of the bylaws, all of the “uncancelled” ownership units, including those held by the club, are entitled to vote in the conduct of the club’s business.
The briefs of the parties raise the question as to the presently-existing rights of the appellees, who as stated above own one ownership unit. In addition to the voting privileges hereinabove described, the appel-lees according to paragraph “c” of the bylaws above quoted are entitled to receive $3,000 for the unit which they hold. The club is authorized if it elects to do so to pay to appellees $3,000 in exchange for their ownership unit. Contrary to the position'of appellees, the failure to purchase their unit prior to January 1, 1955 (paragraph “d” bylaws quoted above), does not result in elevating their unit to a vested interest in the assets of the club in proportion to the number of units outstanding. The bylaws provide that each unit may be purchased for $3,000 “at any time”. This again was part of the contract. If it was unwise, we can only state that those who made it are responsible for its terms. Appellees acquired the ownership unit subject to the contractual *388 arrangement that brought it into being and they must therefore be bound by it.
The decree of the Chancellor is reversed ánd the cause is remanded for further proceedings consistent herewith.
TERRELL, Acting C. J., HOBSON, J., and LOPEZ, Associate Justice, concur.-