325 So.2d 66 (1975)
The SURF CLUB, a Florida Corporation, Appellant,
v.
Maurice C. LONG, and All Persons Similarly Situated, Appellees.
No. 75-538.
District Court of Appeal of Florida, Third District.
October 14, 1975.
Rehearing Denied February 4, 1976.
Walton, Lantaff, Schroeder, Carson & Wahl and James Knight, Miami, for appellant.
Sibley, Giblin, Levenson & Ward, Shutts & Bowen, Miami, for appellees.
Before PEARSON, HENDRY and HAVERFIELD, JJ.
PER CURIAM.
Defendant, The Surf Club, appeals a final judgment (1) enjoining the Club and its board of governors from borrowing any money for the purpose of paying operational *67 losses, (2) directing the Club's board of governors to determine and assess the current dues paying members of the Club the amount necessary and sufficient to pay all current operational losses, (3) declaring the plaintiffs as proprietary owners to be joint owners of a prorate share of the property and franchises of the Club and their rights cannot be defeated by any bylaw adopted by the Club, and (4) ordering an accounting of the operations for the year 1974 to the date of the judgment. Jurisdiction was retained to grant further relief to protect the rights and interest of the plaintiffs in the property and franchises of the Club.
The Surf Club is a large active social club organized in 1930 as a Florida non-profit corporation. In 1955 the Club's charter was amended to read that the highest amount of indebtedness or liability to which the Club could subject itself was $750,000 and the amount in value of the real estate it could hold could not exceed $5,000,000. This amendment was approved by court order.
Plaintiffs, appellees herein, are called proprietary members[1] of the Club and they are each the holder of a proprietor's certificate which provides that the proprietor "is entitled to all the rights and privileges attaching to proprietors. The by-laws defining such rights and privileges appear on reverse hereof." The reverse side of the certificate contains the following language which is identical to Article VII of the by-laws which were in effect at the time of the issuance of the certificates:
"ARTICLE VII
"PROPRIETORS
"Section 1. Proprietors are Regular Members who, in addition to the rights and privileges of the Club thereby possessed by them, are the sole owners of all property and franchises of the Club, and each Proprietor shall, upon dissolution, be entitled to his pro rata share of such property and franchises of the Club or in the proceeds of sale thereof.
"When a Proprietor dies, or whenever the interest owned by a Proprietor shall pass from him or her, whether voluntarily or involuntarily, whether by gift, sale, bequest, distribution, legal process, or in any other manner, Proprietorship in the Club of such member shall cease and determine and the Club shall have in each and every instance, at its option for a period of one year from the date that the Club shall receive written notice of such transfer or termination, the power:
"1. To admit the holder of such interest as a Proprietor and a Regular Member in the Club upon the payment of such regular membership fees as the Board of Governors shall from time to time establish; or
"2. To purchase such interest for cash from such holder or deceased Proprietor's estate at a price representing an equal share of the net assets of the Club at the time of the exercise of the option with the Proprietors whose memberships existed at the time the interest passed, provided that the valuation of the net assets of the Club shall be based upon an appraisal by the Board of Governors, which said appraisal shall be binding upon all parties."
Article XV of the by-laws provides the Club's charter can only be amended "by a a vote of a majority of the Proprietors then in good standing." [Emphasis supplied] In addition, by the terms of the by-laws, Articles VII and XV can only be amended by a 2/3 vote of the proprietors.
Commencing with the year ending September 30, 1970 and up to the present, The Surf Club for the first time in its history *68 began to suffer operational losses resulting in rather large deficits which spawned the instant litigation. To continue operation of the Club, its board of directors sold the Surf Club Apartments and with the proceeds therefrom reduced the indebtedness to $370,000 at the end of its 1971 fiscal year. Nevertheless, in the ensuing years the Club sustained larger and larger operational losses and had a deficit in excess of $1,000,000 as of November 15, 1974.
In March 1970 the Club had attempted to amend Article IX of the charter to authorize an increase of the allowable indebtedness from $750,000 to $5,000,000. In 1974 the Club also attempted to amend Article VII to read as follows:
"Proprietors * * * shall be entitled, in the event of dissolution of the Club, to share pro-rata with the other proprietors in the distribution of the net assets of the Club * * *". [Emphasis supplied]
Finally, on May 11, 1974 the Club's board of governors authorized the issuance of $1,500,000 in promissory notes to finance the operation thereof.
Thereupon, plaintiff Maurice Long, a proprietor, filed a complaint against The Surf Club on behalf of himself and all other proprietors who might desire to intervene as parties-plaintiff. Other appellees did intervene during the course of the litigation. The complaint in essence alleged that the assets of the Club were owned by the proprietors, and the other types of members thereof have no ownership or rights therein and refuse to pay sufficient money in dues and assessments to meet the Club's operating deficit which is in excess of $1,000,000 contrary to the $750,000 limit in the charter. The complaint further alleged that the sale of and pledging of the assets to secure the Club's indebtedness resulted in a dissipation of the proprietors' assets. The plaintiffs prayed that (1) the Club and its officers be enjoined from creating an indebtedness against the Club in the amount of $1,500,000, (2) the court declare the Club in violation of its charter provisions, (3) the court liquidate the Club and sell the assets, and (4) the proceeds therefrom be divided among the proprietors. The Club answered claiming the right to incur the deficits in its operation notwithstanding the fact that said deficits depleted the value of its assets.
The cause was tried non-jury and the trial judge entered his final judgment which reads in pertinent part:
"Based upon the pleadings, evidence, exhibits, and memoranda of counsel, the Court finds:
"1. The provisions appearing on the proprietors' certificates constitutes a contract between the proprietors and the club and creates in the Plaintiffs and those similarly situated full and complete ownership of all of the property and franchises of The Surf Club, subject only to the rights of the active members of The Surf Club to utilize the property and franchises for social purposes.
* * * * * *
"3. The members and the Board of Governors do not have the power or authority to charge the proprietors' ownership interest of The Surf Club with any operational deficit created or caused by the active members' utilization of the property and franchises of The Surf Club. Any such operational loss or deficit must be paid by the members of The Surf Club enjoying the benefits of the utilization of the property and may not become a charge against the proprietors' ownership interest as such.
"It is, thereupon,
"CONSIDERED, ORDERED and ADJUDGED that the Defendant and its Board of Governors and officers are hearby permanently enjoined and restrained from borrowing any money for the purpose of paying operational losses or from incurring any indebtednesses by reason of operation losses. It is further,

*69 "CONSIDERED, ORDERED and ADJUDGED that it is the duty of the Board of Governors of the Defendant to ascertain, determine and assess the current dues paying members of the club the amount necessary and sufficient to pay all current operational losses. It is further,
"CONSIDERED, ORDERED and ADJUDGED that the Court hereby declares that the Plaintiffs and all persons similarly situated, as proprietary owners, jointly own a pro rata share of the property and franchises of the Defendant Surf Club and their rights cannot be defeated by any By-Law adopted by the club or its Board of Directors which seeks to limit the contractual rights of such proprietary owners. It is further,
"CONSIDERED, ORDERED and ADJUDGED that the Defendant shall forthwith file an accounting of the operations for the year 1974 and to the date of this judgment, serving a copy thereof upon the attorneys for the Plaintiffs. The Court retains jurisdiction of this cause to take an accounting in order to ascertain the amount of each annual operating loss which forms a part of any present, outstanding indebtedness of the club and to grant such further relief relating to indebtednesses of the club which have accumulated because of operating losses as shall be proper to protect the rights and interest of the Plaintiffs in the property and franchises of the Defendant club."
The Surf Club perfected this appeal therefrom.
For the first of its three contentions on appeal, appellant Club argues that provisions of the by-laws printed on a membership certificate of a social club organized as a non-profit Florida corporation do not constitute such a contract between the Club and the members as to preclude the Club from amending those by-laws as permitted by its charter and the applicable state statute. We disagree.
On the authority of Surf Club v. Motland, Fla. 1957, 93 So.2d 384 at 386 we find the language appearing on the properietors' certificates created a contractual relationship between The Surf Club and the holders thereof, and thereby the proprietors were vested with complete ownership of all the property and franchises of the Club. The general rule established long ago is that a corporation is prohibited from amending its by-laws so as to impair a member's contractual right. Grand Lodge Knights of Pythias of North America, etc. v. Harris, 124 Fla. 1, 167 So. 814 (1936); Brotherhood's Relief and Compensation Fund v. Cagnina, Fla.App. 1963, 155 So.2d 820.
Hence, our conclusion that the attempted 1974 amendment of Article VII, set out hereinabove, was invalid and void.[2] We also agree with the finding of the trial judge that the members and board of governors of the Club did not have the authority to charge the proprietors' ownership interest of the Club with any operational deficit created by the active members' utilization of the property and franchises of the Club.
Even assuming arguendo that the board of governors had the power to authorize the issuance of $1,500,000 in promissory notes to finance the operation of the Club, we have determined that this authorization exceeded the charter limit of $750,000. For the 1970 amendment to Article IX, raising the Club's liability from $750,000 to $5,000,000, was not effective in that the amendment was not approved by a vote of the majority of the proprietors and further was not approved by the Department of State as required by § 617.02, Fla. Stat., F.S.A.
*70 We also have examined appellant's remaining two points on appeal and find that no reversible error has been made to appear therein.
Accordingly, the judgment appealed is affirmed.
Affirmed.
NOTES
[1] For an indepth discussion of the difference in the Club memberships see Surf Club v. Motland, Fla. 1957, 93 So.2d 384.
[2] We also note that the amendment of Article VII was not approved by 2/3 vote of the proprietors as required therein.