POLSTON, J.,
dissenting.
The Bar failed to comply with its policies, or waive them in the manner prescribed by its bylaws, when it approved the Family Law Section’s request to file an amicus brief on homosexual adoption. Should The Florida Bar follow its own rules? The majority concludes that this decision is up to the Bar. See majority op. at 192. Because I agree with Liberty Counsel that this Court should require the Bar to comply with its own rules, I respectfully dissent.[14]
I. Failure to Properly Approve Amicus Brief on Divisive Issue
The Florida Bar’s Standing Board Policy 8.10(a)(3) provides that sections of the *193 Bar may not submit an amicus brief in pending litigation if the issue involved “carries the potential of deep philosophical or emotional division among a substantial segment of the membership of the bar.” The issue of homosexual adoption is undeniably divisive. The Florida Bar does not argue otherwise. The majority opinion does not hold otherwise.
The Bar has consistently recognized the divisive nature of homosexual adoption in the past. In 2004, the Bar rejected the Family Law Section’s request to lobby for the repeal of Florida’s law specifically because it determined that the issue of homosexual adoption had the potential of creating a deep philosophical and emotional divide among members of the Florida Bar. See Alan B. Bookman, Our Legislative Role, Fla. B.J., Feb. 2006, at 8. Then, in 2005, the Bar again recognized the divisiveness of the issue when it denied the Family Law Section’s request to lobby that some homosexual parents be permitted to adopt. See Jan Pudlow, Family Law Section to File Gay Adoption Case Amicus, The Florida Bar News, Feb. 15, 2009.
In this case, based upon the meeting minutes from January 30, 2009, it is not at all clear that The Florida Bar made any determination regarding divisiveness or even that it recognized that Standing Board Policy 8.10(a)(3) required it to do so. The meeting minutes simply state:
The board voted to not disallow the Family Law Section filing an amicus brief with the Third District Court of Appeal in the case, In the Matter of the Adoption of John Doe and James Doe, supporting the ruling of the trial court judge in that case. The judge ruled F.S. § 63.042(3) unconstitutional and allowed homosexual foster parents to adopt two brothers they had raised for four years. The Board of Governors’ action does not constitute The Florida Bar’s formal endorsement of the section’s position. It acknowledges the subject matter is within the purview of the section’s area of expertise and permits the section — composed of and funded entirely by voluntary members — to go forward. No Bar membership fees will be expended to advocate the brief put forth by the section and the amicus will be written by a volunteer. Board member Larry Ringers recused himself from the vote.
The Florida Bar Board of Governors, Regular Minutes (Jan. 30, 2009), at 5-6. These meeting minutes do not mention whether the Bar determined the divisiveness of homosexual adoption as its policy required.
The only indication of any discussion by the Board of Governors comes from a Florida Bar News article cited by Liberty Counsel. See Pudlow, supra. The article indicates that some members of the Board of Governors considered the merits of homosexual adoption, not the divisiveness of the issue. For instance, one board member is reported as having been moved by the Holocaust and the movie, Judgment at Nuremburg, where the leaders did not do the right thing. Id. at 1. This board member is quoted as saying, “[W]e are the leaders of the Bar” and “I think we should send a message to Floridians that we are here to uphold the law, and we are here to do the right thing.” Id. Another board member is quoted as saying, “To consider children are being prohibited from having the right to be adopted by appropriate and very caring individuals is completely wrong, and we should not let that go forth.” Id. These comments, indicating support for the merits of the proposed amicus position, do not address the divisiveness issue at all and are contrary to the Board’s minutes indicating there was no endorsement.
*194 Even though the issue is divisive, the Board of Governors could have voted to waive the application of its Standing Board Policy 8.10(a)(3) with a two-thirds vote, pursuant to its bylaws.[15] Yet it did not do so. Specifically, Bylaw 2-9.2 provides:
The board of governors shall adopt standing board policies governing the internal administration and operation of The Florida Bar and the board of governors. The board of governors may adopt, amend, or rescind standing board policies by a majority vote of the membership of the board of governors provided any amendment to any standing board policy shall not be effective until 30 days after adoption. Such standing board policies may be adopted, rescinded, or amended by a majority vote of those present at any regular meeting of the board of governors provided advance written notice is given to the members of the board of governors of the proposed adoption, repeal, or amendment of any standing board policy. The provision of any standing board policy may be waived by a two-thirds vote of those present at any regular meeting of the board of governors.
R. Regulating Fla. Bar, Bylaw 2-9.2 (emphasis added).
Voting to waive the standing board policy is the only method by which the Bar may take contrary action, as approved by this Court. See Fla. Bar re Rules Regulating the Fla. Bar, 494 So.2d 977, 992-93 (Fla.1986) (adopting Bylaw 2-9.2); see also R. Regulating Fla. Bar 1-11.2, 1-11.3 (explaining that this Court reviews objections to proposed bylaws and may amend bylaws adopted by the Bar at any time). This Court is not micromanaging the affairs of the Bar by requiring it to comply with the bylaws approved by this Court.
There are no provisions for an implicit waiver in any applicable standing board policy provisions or bylaws of the Bar. However, the majority holds that the unanimous vote by the Board implicitly waived the Bar’s standing board policy. See majority op. at 192. Contrary to the majority’s holding, Bylaw 2-9.2 expressly requires a two-thirds vote to waive such policies. And because Bylaw 2-9.2 expressly requires a waiver by a two-thirds vote, a two-thirds vote is the only possible method of waiving standing board policies. See Bush v. Holmes, 919 So.2d 392, 407 (Fla.2006) (defining the principle of construction “expressio unius est exclusio al-teráis,” or “the expression of one thing implies the exclusion of another,” by explaining that when the manner of doing an act is prescribed, “the manner prescribed is exclusive”). Therefore, the Board’s unanimous approval of the Family Law Section’s amicus brief does not constitute a legally recognizable waiver of Standing Board Policy 8.10(a)(3).
Significantly, the Bar must comply with RobeH’s Rules of Order when conducting its meetings, which do not permit an implicit waiver. See R. Regulating Fla. Bar, Bylaw 2-9.6 (“The current edition of Robert’s Rules of Order shall be the rules that govern the conduct of all meetings of The Florida Bar, its board of governors, its *195 sections, divisions, and committees.”). Robert’s Rules states that rules contained in an organization’s bylaws “cannot be suspended — no matter how large the vote in favor of doing so or how inconvenient the rule in question may be — unless the particular rule specifically provides for its own suspension, or unless the rule properly is in the nature of a rule of order.” Henry M. Robert III et al., Robert’s Rules of Order Newly Revised § 25, at 254 (10th ed.2000). The Bar’s Bylaw 2-9.2, which provides for the waiver of standing board policies by a two-thirds vote, does not specifically provide for the suspension of Bylaw 2-9.2 itself and is not a rule of order. As a result, the particular manner for waiving standing board policies prescribed by Bylaw 2-9.2 cannot be suspended “no matter how large the vote in favor of doing so or how inconvenient the rule in question may be.” Id; see also id. § 25, at 257-58 (explaining that suspending a rule by unanimous consent, rather than by making a formal motion to suspend the rules, is accomplished prospectively by asking for unanimous consent and then asking if anyone objects).
Therefore, under RobeR’s Rules of Order, a unanimous vote does not retroactively cure the Bar’s failure to comply with Standing Board Policy 8.10(a)(3) or waive the policy in the manner prescribed by Bylaw 2-9.2. The majority’s holding that there was an implicit waiver of Standing Board Policy 8.10(a)(3) is contrary to the Bar’s specific bylaws regarding how a waiver may be obtained.
II. This Court Has a Duty to Supervise The Florida Bar
The Florida Bar is “an official arm of the court.” R. Regulating Fla. Bar, ch. 1, Intro. Indeed, the Board’s actions are “subject always to the direction and supervision of the Supreme Court of Florida.” R. Regulating Fla. Bar l-4.2(a). Therefore, as the administrative head of the Bar, this Court not only has the authority, but the duty, to require the Bar to follow its own bylaws and policies.
Every day, the Bar holds attorneys accountable for their actions in compliance with the rules of The Florida Bar. See generally R. Regulating Fla. Bar 3-3.1 (designating the Bar as an agency of this Court for the purpose of enforcing the rules of conduct for attorneys). When these rules are not complied with, there are disciplinary consequences to the lawyers. See R. Regulating Fla. Bar 3-5.1 (listing the disciplinary consequences to lawyers who are found guilty of violating the rules). It is not too much to ask for the Bar to comply with its own requirements when we expect lawyers to comply with the requirements of the Bar. See R. Regulating Fla. Bar 1-11.1 (explaining that the Bar’s bylaws “govern the method and manner by which the requirements” of the Bar’s rules are met).
The majority concludes that this Court should not require the Bar to comply with its own policies and bylaws because the Bar has the authority to act in regards to sections and, therefore, its actions are not ultra vires. See majority op. 191-92. I do not agree with this conclusion or the particular use of the terms “authority” and “ultra vires” that the majority employs to arrive at its conclusion.
“Authority” is defined as “[t]he power to command, enforce laws, exact obedience, determine, or judge.” American Heritage Dictionary 142 (2d coll, ed.1991). And, as the majority notes, “ultra vires” is defined as “unauthorized; beyond the scope of power allowed or granted by a corporate charter or by law.” Majority op. at 191 (quoting Black’s Law Dictionary 1559 (8th ed.2004)). However, the majority’s use of these terms does not acknowledge that certain requirements, such as compliance *196 with rules, must be met for the exercise of authority to be legal and proper. For instance, a police officer has the authority to conduct searches but not before fulfilling the procedural requirement of obtaining a valid warrant. See generally Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979); see also Word of Life Ministry, Inc. v. Miller, 778 So.2d 360, 363 & n. 3 (Fla. 1st DCA 2001) (“Even if those voting on May 24, 1978, had been authorized to elect directors, the elections were void for failure to observe restrictions imposed by the articles of incorporation which required directors to be members of the corporation;” electing individuals as directors did not confer membership because of specific bylaw procedural requirements for membership). Therefore, unlike the majority, I conclude that the Bar only has the authority to approve a section’s amicus brief when, in doing so, the Board complies with all applicable bylaws and standing board policies.[16]
In particular, I respectfully disagree with the majority’s statement that “the Court will not interfere with or micromanage the activities of the Bar’s sections, or the approval of those activities by the Bar, unless the Bar’s actions regarding the scope of the activities of its voluntary sections are clearly outside the Bar’s authority.” Majority op. at 191. This statement is overly broad because there is nothing outside the Bar’s authority, as the majority uses the term “authority,” when it comes to the activities of the sections. Sections are created or abolished by the Bar’s Board “as deemed necessary or desirable.” R. Regulating Fla. Bar, Bylaw 2-7.3. The sections’ bylaws, which define the scope and purpose of the sections, are approved by the Board. R. Regulating Fla. Bar, Bylaw 2-7.1. And the sections, which are integral parts of the Florida Bar, must work under the Board’s supervision to accomplish their goals and purposes. R. Regulating Fla. Bar, Bylaw 2-7.2. But the majority’s statement indicates that this Court will never act to supervise the Bar in its actions relating to sections.
As the administrative head of the Florida Bar, we simply cannot abdicate our duty to supervise the Bar. See art. V, § 15, Fla. Const. (“The supreme court shall have exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted.”); Askew v. Cross Key Waterways, 372 So.2d 913, 920-21 (1979) (explaining that the nondelegation doctrine prohibits the delegation of constitutional functions to others).
III. Conclusion
Because the Bar failed to comply with or waive its Standing Board Policy 8.10(a)(3), and this Court has the duty to supervise the Bar, I would grant Liberty Counsel’s request for injunctive relief without prejudice to the requisite vote on whether to waive the standing board policy. Accordingly, I respectfully dissent.
CANADY, J., concurs.

. I agree with the majority that Liberty Counsel has not met the requirements for injunctive relief regarding its First Amendment and Code of Judicial Conduct claims.

. In footnote 13, the majority notes a potential inconsistency between the Bar’s standing board policies regarding voluntary sections and this Court’s decisions. See majority op. at 191, n. 13. I do not see an inconsistency. The Bar's policies do not include an absolute prohibition against sections performing activities on divisive issues, but the procedural requirement for a waiver must be followed. See R. Regulating Fla. Bar, Bylaw 2-9.2 (authorizing a waiver of standing board policies by a two-thirds vote). There are very good reasons why the Bar may wish to retain its current policies, but I agree with the majority that this issue is not before us.

. Additionally, it appears the majority misconstrues Liberty Counsel’s argument when the majority states that "the decision whether to allow an entity to file an amicus brief is ordinarily a decision made by the court in which permission is sought rather than a decision for this Court, in the exercise of our supervisory authority over the Bar.” Majority op. at 191. Liberty Counsel does not argue that this Court should decide whether the Third District Court of Appeal should grant the Family Law Section's motion to file an amicus brief. Instead, Liberty Counsel argues that this Court should not allow the Bar to approve the Family Law Section's filing of an amicus brief in the Third District without first complying with its own bylaws and standing board policies.