778 So.2d 360 (2001)
The WORD OF LIFE MINISTRY, INC., a/k/a Word of Life Church, Inc., a Florida non-profit corporation; Jennifer T. Porter; James R. Porter, III; Elaine Meadows; Stephen C. Meadows; Thomas H. Karst, Jr.; Norman D. McCluskey; Mary E. Andreas; Norma H. Hughes; William B. Cook, III; Raymond O. Borne; Maria Sorenson; and H. Scott Sorenson; individually, Appellants,
v.
Marcus MILLER, Dolores Miller, and Joan Belavitch, Appellees.
No. 1D99-2541.
District Court of Appeal of Florida, First District.
January 11, 2001.
Rehearing Denied February 16, 2001.
*361 S. Perry Penland, Jr., and Paul S. Boone, Jacksonville, for Appellants.
Adam G. Adams, III, and Courtney K. Grimm of Adams & Grimm, P.A., Jacksonville, for Appellees.
BENTON, J.
Along with The Word of Life Ministry, Inc., a non-profit corporation (the Church), individual plaintiffs who are members of the congregation appeal a final summary judgment entered in favor of Marcus Miller and Dolores Miller, the husband and wife whom the Church employed as ministers, and Joan Belavitch, the bookkeeper. We affirm the judgment insofar as it dismisses the individual plaintiffs because *362 they lack standing to sue as individuals, and also insofar as it exonerates Joan Belavitch. But we reverse the final summary judgment entered against the Church, the corporate plaintiff, and in favor of the Millers, and remand for additional proceedings consistent with this opinion.
Since the present case implicates neutral legal principles only, precedent supports judicial resolution of the parties' dispute over corporate assets, the corporation's religious purposes notwithstanding. See generally Houseman v. Summit Christian Sch. of Palm Beach County, Fla., Inc., 762 So.2d 979, 980 (Fla. 4th DCA 2000); Doe v. Evans, 718 So.2d 286, 288 (Fla. 4th DCA 1998); Hemphill v. Zion Hope Primitive Baptist Church of Pensacola, Inc., 447 So.2d 976, 977 (Fla. 1st DCA 1984); Umberger v. Johns, 363 So.2d 63, 65 (Fla. 1st DCA 1978); Rolle v. Judge, 310 So.2d 42, 42 (Fla. 4th DCA 1975); cf. Kond v. Mudryk, 769 So.2d 1073, 1076 (Fla. 4th DCA 2000).
[T]he doctrine of either side is ... of no moment here. The courts are not concerned with the articles of faith of either, nor with the question as to whether or not the articles of faith or the religious doctrines of either are respected and observed.
The only question which is sought to be presented here which may be addressed to the courts is in regard to the right to control the church property. See Hackney v. Vawter, 39 Kan. 615, 18 P. 699; Fulbright v. Higginbotham, 133 Mo. 668, 34 S.W. 875; State v. Farris, 45 Mo. 183; Prickett v. Wells, 117 Mo. 502, 503, 24 S.W. 52; Bates v. Houston, 66 Ga. 198.
Partin v. Tucker, 126 Fla. 817, 819, 172 So. 89, 89 (Fla.1937). The parties have asked neither us nor the trial court to "become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal beliefs." Serbian Eastern Orthodox Diocese v. Milivojevich, 426 U.S. 696, 709, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976). The dispute arose when, in conjunction with their retirement from the Church, Mr. and Mrs. Miller sought to have the Church's assets transferred to other corporations. At issue are rights to expensive real estate (which may by now have been transferred) and liquid assets worth approximately two million dollars.
Incorporated as The Word of Life Ministry, Inc., the Church was organized under articles of incorporation which provided for amendment only by a two-thirds vote of the members of the corporation. The articles of incorporation listed seven persons as members of the original board of directors (Christopher Martin, Sidney Clark, Mildred Clark, Thomas Barket, Barbara Barket, Joe Hughes, and Norma Hughes) and specified that board members "shall be members of the corporation." The articles of incorporation named nobody else a member of the corporation.
Membership in the congregation should not be confused with membership in the corporation. As the learned trial judge recognized, most members of the congregation were in legal contemplation strangers to the corporation. No use has ever been made of article XIII, section 2 of the original by-laws,[1] which outlines a procedure for proposing and approving new members of the corporation ("members shall be elected by a majority vote of the entire Board of Directors"). The final summary judgment found "that there have never been elections of any form adding new members to the corporation."
*363 Under the bylaws, the members of the corporation are to elect directors at annual meetings. A corporation must act in accordance with its articles of incorporation and duly adopted by-laws. See Yarnall Warehouse & Transfer v. Three Ivory Bro. Moving Co., 226 So.2d 887, 890 (Fla. 2d DCA 1969) ("The corporation and its directors and officers are bound by and must comply with the charter and bylaws."). At a meeting on May 24, 1978, despite the absence of a majority of the members of the corporation,[2] Dolores Nassiff (later Mrs. Miller) was purportedly elected corporate president and director and Mr. Miller was purportedly elected corporate treasurer and director. (At the same meeting, Ms. Belavitch was designated corporate secretary and bookkeeper, but not director.)
Even if those voting on May 24, 1978, had been authorized to elect directors, the elections were void for failure to observe restrictions imposed by the articles of incorporation which required directors to be members of the corporation.[3]See S & T Anchorage v. Lewis, 575 So.2d 696, 698 (Fla. 3d DCA 1991) ("The Assignment ... and ... subsequent ratification ... are invalid because they ... are ultra vires acts."); Wolfson v. Cary, 488 So.2d 864, 869 (Fla. 3d DCA 1986) (holding void "shares issued in excess of the amount of common shares authorized in [the] articles of incorporation").
Approximately a year later, on May 14, 1979, those present[4] at a meeting the minutes described as a meeting of the board not the specially noticed meeting of a majority of the corporation's members[5] required by the articles of incorporation purported to approve an amendment to the articles of incorporation. Joe Hughes, who remained a member and director[6] of *364 the corporation despite his resignation as vice-president the following day, was apparently the only member of the corporation in attendance.
The amendment would have changed the name of the corporation to Word of Life Church, Inc. and would have nullified the original articles of incorporation and by-laws. It also would have created a council of elders and vested this council with complete control over the affairs of the Church, including the ability to dissolve the corporation and distribute its assets. The amendment named Mr. and Mrs. Miller and Ms. Belavitch elders and officers.[7] Because at most a single member of the corporation voted for the amendment, however, the amendment was ultra vires and of no legal effect. See AGR Halifax Fund, Inc. v. Fiscina, 743 A.2d 1188, 1195 (Del.Ch.1999) (holding a corporate "Charter Amendment was invalid from its inception" because the persons voting for its adoption were not then de jure directors).
On November 10, 1994, the putative council of elders purported to effect another amendment to the articles of incorporation to provide that the Church would have no members. Then, after Mary Miller, Mr. Miller's sister, had replaced Joan Belavitch as a putative elder or director, the three Millers met on March 8, 1996, and voted to dissolve the corporation and distribute its assets. Articles of dissolution were filed accordingly. These acts were also ultra vires and without legal effect, however. See Radison Properties, Inc. v. Flamingo Groves, Inc., 767 So.2d 587, 589 (Fla. 4th DCA 2000) (holding deed executed by former corporate president was void); Prigerson v. White Cap Sea Foods, Inc., 100 N.Y.S.2d 881, 884 (N.Y.Sup.Ct.1950) ("The board of directors not having been legally chosen, its subsequent purported [action] will likewise be vitiated.").
On September 25, 1997, the Church (the corporation) filed a complaint against Mr. and Mrs. Miller and Ms. Belavitch contesting dissolution of the corporation and seeking to recover and protect the corporation's assets. "A corporation's power to act may be challenged ... [i]n a proceeding by the corporation, directly ... against an incumbent or former officer, employee, or agent of the corporation." § 617.0304(2)(b), Fla.Stat. (1997).
In due course, the Church and various individual plaintiffs filed a third amended complaint alleging that a majority of the directors,[8] who were in place before the Millers' purported elections, approved and authorized the Church's filing the lawsuit; that the putative amendments to the articles of incorporation were never approved by the corporate membership[9] and were *365 therefore ultra vires and void; and that the putative council of elders lacked authority to amend the articles of incorporation or to dissolve the Church. The third amended complaint alleged conversion of the Church's assets and sought equitable relief, including an injunction to prevent the Millers from disposing of the Church's assets; an accounting; and rescission and cancellation of any asset transfers already accomplished.
The trial court initially ordered certain assets frozen but, on cross motions for summary judgment, ultimately entered final summary judgment in favor of all defendants on the theory that all claims were time-barred.[10] At oral argument, the appellants conceded that the trial court properly granted summary judgment as to Ms. Belavitch, albeit for a different reason: she was not a member of the putative council of elders when it voted to dissolve the Church. On this basis, we affirm the final summary judgment insofar as it exonerates Ms. Belavitch.
We also affirm the summary judgment insofar as it dismisses all individual plaintiffs for lack of standing. Individual plaintiffs have no basis to complain about events that took place while they were not members of the Church (the corporation), even on an assumption that members of corporations not for profit have rights of redress fully equivalent to those that shareholders in other corporations have. See generally News-Journal Corp. v. Gore, 147 Fla. 217, 221, 2 So.2d 741, 743 (Fla.1941) ("It is the general rule `that stockholders have no standing to attack mismanagement of the corporation prior to the acquisition of their stock.' 6 Thompson on Corporations, 3rd Ed., Sec. 4509."). The individual plaintiffs who were members of the congregation when the events complained of transpired were not, with the exception of Ms. Hughes, members of the Church (the corporation). In their reply brief and at oral argument, appellants waived any objection to Ms. Hughes' dismissal as an individual plaintiff.
*366 We reverse, however, the trial court's ruling that the Church's claims were time-barred. The third amended complaint seeks relief on account of what occurred in or after March of 1996 when the putative council of elders purportedly undertook distribution of corporate assets. "A statute of limitations `runs from the time the cause of action accrues' which, in turn, is generally determined by the date `when the last element constituting the cause of action occurs.' § 95.031, Fla.Stat. (1987). See State Farm Mut. Auto. Ins. Co. v. Lee, 678 So.2d 818, 821 (Fla.1996)." Hearndon v. Graham, 767 So.2d 1179, 1184 (Fla.2000). See Penthouse North Ass'n v. Lombardi, 461 So.2d 1350, 1352 (Fla.1984). When suit was filed (no more than nineteen months after the corporate assets were allegedly converted), the statute of limitations had not run.
Like any owner, the corporation is entitled to recover property that others, including its officers or employees, have wrongfully converted. Viewing the Millers as de facto directors of the corporation would not strengthen their case in this regard. See Flight Equip. & Eng'g Corp. v. Shelton, 103 So.2d 615, 626 (Fla.1958) ("An officer or director occupies a quasifiduciary relation to the corporation and the existing stockholders. He is bound to act with fidelity and the utmost good faith. He is bound to be loyal to his trust. In accepting the office he impliedly agrees and undertakes to give the corporate enterprise the benefit of his best care and judgment and to exercise the powers conferred on him solely in the interest of the corporation and the stockholders."); Rogers v. Riddle, 128 So.2d 409, 409 (Fla. 3d DCA 1961) ("[I]n Florida an officer of a corporation occupies a quasi-fiduciary relation to the corporation and the stockholders."). The third amended complaint alleges that the Millers acted in furtherance of their own personal interests rather than in the Church's best interests.[11]See Flight Equip. & Eng'g Corp., 103 So.2d at 627 ("Officers and directors of a corporation are liable for damages to the corporation which result from a breach of their trust, a violation of authority or neglect of duty.").
Summary judgment is proper only insofar as no genuine issues of material fact exist. See, e.g., Gerard v. Scott Crane Rental Corp., 754 So.2d 896, 897 (Fla. 1st DCA 2000) ("It is well established that summary judgment should only be granted if the moving party demonstrates conclusively that no genuine issues exist as to any material fact, with all reasonable inferences drawn in favor of the opposing party."); Lindsey v. Bill Arflin Bonding Agency, Inc., 645 So.2d 565, 566 (Fla. 1st DCA 1994) ("Summary judgment should be granted only where it is clear that no issues of material fact exist.").
In reversing final summary judgment in favor of the Millers, we hold that the original members and directors of the corporation remain in control of the Church, absent resignation or removal in accordance with the original articles of incorporation and bylaws, until and unless amended as provided therein. We recognize, however, that the precise contours of any relief for the corporation will depend on facts not yet clear on this record, facts which may be in dispute and which may involve third parties. Depending on facts developed on remand, "the court may enjoin or set aside the act[s complained of], if equitable and if all affected persons are parties to the proceeding, and may award damages...." § 617.0304(3), Fla.Stat. (1997). See generally Lensa Corp. v. Poinciana Gardens Ass'n, 765 So.2d 296 (Fla. 4th DCA 2000). Compare Radison Properties, 767 So.2d at 588, with Ocean Bank v. Inv-Uni Inv. Corp., 599 So.2d 694 (Fla. 3d DCA 1992).
*367 The final summary judgment is affirmed except insofar as it grants summary judgment for the Millers against the Church (the corporate plaintiff). Insofar as it grants summary judgment for the Millers against the Church, the final summary judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.
BOOTH, J., and SHIVERS, DOUGLASS B., Senior Judge, concur.
NOTES
[1] These by-laws implemented article III of the articles of incorporation, which provided:

The membership of this corporation shall consist of all persons hereinafter named as subscribers, and such other persons as may be elected to membership in the manner provided in the By-laws provided such members shall (a) subscribe to the purpose of this corporation; (b) commit themselves to actively support the mission and ministry of the corporation; and, (c) are received in the membership by the Governing Board of the corporation.
[2] At most three of the members of the corporation were present. One of the three, Mr. Martin, testified he did not think he had attended, the minutes notwithstanding.

Whether he did or notwhether two or three members attendedis immaterial, because there were a total of at least six members of the corporation (each of whom was also a director) on May 24, 1978.
Only if there had been five or fewer members of the corporation could three have constituted a majority.
[3] Despite the trial court's finding to the contrary, the appellees argue that the very act of electing the Millers directors conferred membership in the corporation. One obvious difficulty with this argument is that they were not elected "by a majority vote of the entire Board of Directors." As noted ante in note 2, no more than three (perhaps only two) members of the board (each of whom was also a member of the corporation) were present.

The bylaws of the Church contain specific notice and quorum requirements for meetings of the members. Article III, section 4 requires that members receive at least ten days' notice in writing of any membership meetings. The notice must be mailed to the member's usual place of business or residence. Article III, section 6 of the bylaws requires a majority of the members to be present in order to transact business at a membership meeting. As far as the record shows, this was not done. The minutes reflect a meeting of the board, not the membership.
[4] Mr. Miller testified on deposition that he, Mrs. Miller and Ms. Belavitch attended the meeting on May 14, 1979 "and [he] assume[d] Joe Hughes was at that meeting because his name is mentioned" in the minutes.
[5] A two-thirds vote of the membership was required to amend the articles of incorporation, yet no more than one lawfully designated member of the corporation voted to amend the articles of incorporation.

Even if Mr. Hughes was present to vote for the amendment, as many as six of the seven members of the corporation were absent. Minutes of an earlier meeting did state that "Sid Clark is now involved in other ministries and we have his resignation, so the office of Secretary is now open." Even if Mr. Hughes was present and Mr. Clark had resigned as a member of the corporation when he resigned as corporate secretary, as many as five of six members of the corporation were absent.
Appellees conceded that at least two of the members of the corporation who were not present at the meeting were still active in and involved with the Church.
[6] The annual report of 1979 listed Mr. Hughes, Mr. Miller, Mrs. Miller, Ms. Belavitch, and a Mr. McKinney as directors. The minutes of the meeting on May 14, 1979, note that Mr. McKinney had resigned as a director. The minutes in the record do not indicate that Ms. Belavitch was named as a director before May 14, 1979.
[7] The Church's annual reports from 1980 to 1995 listed the Millers and Ms. Belavitch as directors and officers of the Corporation. The annual reports from 1985 to 1988 also listed Mr. McKinney as a director.
[8] The record does not reflect that, even by the time of the proceedings below, any one of the original directors had resigned as a director (although two had resigned as officers) or that the provision of the bylaws specifying the procedure for removing directors (Article IV, section 9) had ever been invoked.

Norma Hughes's testimony on deposition that she was never removed and never resigned from the board of directors was not controverted and, on summary judgment, is properly taken as establishing the fact, even though the annual reports for 1976, 1977 and 1978 listed Christopher Martin, Joe Hughes, Sidney Clark, Thomas Barket, Mildred Clark, and Barbara Barket, but not Ms. Hughes, as directors.
[9] Appellees' counsel conceded at oral argument that the board of directors comprised the original corporate membership, but argued that some of the members "abandoned" the Church. The Church never took any action to remove any member, however.

Section 5 of Article XIII of the by-laws provided a method for the expulsion or suspension of members. The Church could have used those procedures to remove the members the Millers now say abandoned the Church, but did not do so.
[10] The trial court ruled that a cause of action arose at least as early as May 14, 1979, when the articles of incorporation were initially, putatively amended. We assume for purposes of decision that some cause of action did arise then. But the Church's assets at issue here remained, it is alleged, in corporate ownership until March of 1996, when the divestitures complained of allegedly occurred.

The Millers now set up their supposed authority over corporate assets in the nature of an avoidance of the Church's claims that the assets were misapplied. In defending against the Millers' assertions of authority, the Church naturally pleads facts showing that the Millers' asserted authority is illusory. See generally Dominguez v. Superior Court, 139 Cal.App.3d 692, 189 Cal.Rptr. 5 (1983). In this concededly broad sense, the Church raises the issue "defensively." See generally Allie v. Ionata, 503 So.2d 1237, 1239-40 (Fla. 1987); O'Brien v. Federal Trust Bank, 727 So.2d 296, 298 (Fla. 5th DCA 1999) ("Even if barred ... by the statute of limitations, a claim may be asserted defensively....").
In any event, we have concluded that the action taken on May 14, 1979, was ultra vires, void, null and of no effect. See generally Wolfson v. Cary, 488 So.2d 864, 868 (Fla. 3d DCA 1986); Beau Monde, Inc. v. Bramson, 446 So.2d 164, 166 (Fla. 2d DCA 1984); Surf Club v. Long, 325 So.2d 66, 69 (Fla. 3d DCA 1975); Prigerson v. White Cap Sea Foods, Inc., 100 N.Y.S.2d 881, 884 (N.Y.Sup.Ct.1950); Howe v. Washington Land Yacht Harbor, Inc., 77 Wash.2d 73, 459 P.2d 798, 806 (1969). Those voting to amend the articles of incorporation lacked legal authority to make such an amendment. See Wolfson, 488 So.2d at 868. Stevens v. Emergency Hosp. of Easton, Inc., 142 Md. 526, 121 A. 475, 478 (1923). Void ab initio, the ersatz amendment has not improved with age. Nor did filing with the Department of State breathe life into a dead letter.
The Millers' claim of authority over the assets can be traced ultimately to the initial, ultra vires amendment, which bears some legal resemblance to a wild deed. Title to land cannot be conferred by a wild deed of comparable vintage. See Marshall v. Hollywood, Inc., 236 So.2d 114, 118-120 (Fla.1970). Until enactment of the Marketable Record Title Act, a forged or otherwise void deed was a nullity which could never start the running of a statute of limitations, see Reed v. Fain, 145 So.2d 858, 864 (Fla.1961), even if recorded. See Wright v. Blocker, 144 Fla. 428, 434, 198 So. 88, 90 (Fla.1940) (holding recording "afford[ed] no protection to the claimants thereunder").
[11] While the Church has standing to assert its continued legal existence as well as to seek to preserve corporate assets, the dissolution issue is now moot. The same parties who filed articles of dissolution have since filed papers revoking the articles of dissolution. Whether both these actions or neither was efficacious, the Church remains an active corporation.