MARSTILLER, J.
 

 The underlying controversy in this case is over how the First Baptist Church of Micanopy, Inc., (“Church”) should be governed. The parties have divergent beliefs about church governance, and their disagreement fueled a struggle for control of the Church. Their power struggle ended up in circuit court, where the ousted group sued the Church and its pastors for breach of fiduciary duty. The plaintiffs,
 
 [1]
 
 Appellants in this court, alleged that the defen
 
 *201
 
 dants
 
 [2]
 
 acted unlawfully by failing to follow the procedures set forth in the Church’s Articles of Incorporation and Bylaws for removing individuals as members and officers of the Church, electing directors, and amending the Articles and Bylaws. Concluding, after holding an evidentiary hearing, that it lacked jurisdiction over what it deemed an ecclesiastical dispute, the circuit court entered final judgment for the defendants. We agree with the lower court’s decision and accordingly affirm the judgment.
 

 Background
 

 The First Baptist Church of Micanopy, Inc., is a non-profit corporation organized under chapter 617, Florida Statutes. The Church’s Articles of Incorporation on file with the Secretary of State when the controversy arose (“1955 Articles”) provided that “[a]ll active members of the First Baptist Church of Micanopy, Florida, ... shall become members of this corporation and comprise the entire membership of this corporation.” Under Articles VI and VII, there was to be a seven-member board of directors to manage the “affairs of the corporation,” and director elections were to occur “annually at a meeting of the members of the corporation to be held without notice on the last Wednesday night of September each year.” Further, Article VIII stated that “[t]he by-laws of this corporation shall be made, altered, amended or rescinded by the board of directors of this corporation.”
 

 The bylaws in effect during the relevant period were adopted by the Church membership on January 19, 1994 (“1994 Bylaws”). They specify the terms of membership in the congregation (eligibility; voting rights; procedure and grounds for termination). As to termination by exclusion the 1994 Bylaws state: “[T]he church may, after due notice and consideration, terminate the membership of any member at the next scheduled business meeting or within 30 days by the vote of a simple majority.” The 1994 Bylaws also provide that regular business meetings were to be held monthly, while special meetings could be held “by notifying the Moderator or Pastor and announcing it publiely at a regularly scheduled church service, one week in advance, if possible.” Further, “[a] majority vote of all active members present, unless otherwise stated herein, shall decide all matters,” and the bylaws may be amended “by a majority vote of all active members present, at the regular business meeting or a special called meeting after one week’s notice.”
 

 Around August 2007, a small group within the Church comprised of then-pastor Eric Redmond, assistant/co-pastor Wesley Jamison, and Robert Gulick began discussions with members about the wisdom of, and Biblical justification for, changing the Church’s governance structure from congregation led to elder led. On January 16, 2008, after the regular business meeting adjourned, Redmond again raised with the members in attendance his proposal for an elder-led form of governance. The proposal met with strong opposition from several individuals, including Appellants Carson Roberts and Martha Weaver.
 

 The parties dispute what occurred during subsequent conversations between Redmond and opposition members, and whether certain individuals relinquished their offices and membership voluntarily or were forced out. But the record reflects that between January 18, 2008, and
 
 *202
 
 February 20, 2008, Redmond spoke with, or attempted to speak with, several of the Appellants about what he considered to be grounds for removing them as members of the Church. He called two special meetings of the membership — one on January 20, 2008, and another on February 3, 2008 — to announce that Carson and Faye Roberts would no longer be in their leadership positions and to take action on “disciplinary matters” involving Carson Roberts, Ruby Sheffield, Martha Weaver and Wesley Weaver. At the next regular business meeting on February 20, 2008, a majority of the members attending voted to terminate those individuals’ membership. After the vote, Redmond directed the new non-members to leave the premises, which they eventually did, taking more than twenty sympathizers with them. Thereafter, the membership voted to amend the 1955 Articles and the 1994 Bylaws as necessary to transition from a congregational church to an elder-led church, and to take a final vote at a special meeting on March 2, 2008. Members also voted to reduce the number of Church trustees/corporate officers from five to three, make the membership of the Board of Directors and the Board of Elders identical, and revise the Bylaws accordingly; and add Robert Gu-lick to the Board of Elders (joining Redmond and Jamison).
 

 Prior to the February 20 votes, the Church officers/directors included Faye Roberts, president and director; Ronald Ward, vice president and director; William Hayden, secretary/treasurer and director; Sam Register, director; Phillip Samuels, director; and Carson Roberts, deacon and moderator. On February 22, 2008, the Church filed an Annual Report with the Secretary of State reflecting the following officers and directors: Wesley Jamison, president and director; Eric Redmond, vice president and director; and Robert Gulick, secretary and director. The March 2, 2008, special meeting took place as scheduled, and there the Church membership adopted its Amended and Fully Restated Articles of Incorporation (“2008 Articles”) and completely revised bylaws (“2008 Bylaws”) establishing an elder-led form of governance.
 

 The Complaint
 

 Appellants’ Third Amended Complaint filed October 2, 2009, seeks to undo the membership terminations of Carson Roberts, Ruby Sheffield, Martha Weaver and Wesley Weaver, the election of Wesley Jamison, Eric Redmond and Robert Gulick to the reconstituted three-member Board of Directors, and the adoption of revised Articles of Incorporation and Bylaws. The overarching allegation is that the Church took these actions without following the procedures set forth in the 1955 Articles and 1994 Bylaws. But Appellants not only allege that the relevant meetings were held without proper notice, thereby nullifying the votes cast, they also allege,
 
 inter alia,
 
 that:
 

 • Eric Redmond and Wesley Jamison were concerned that the Church’s congregation-led government was inconsistent with Biblical teachings.
 

 • The two men “decided on a plan to supplant congregation governance with elder-governance” under which “three male elders would make all decisions” for the Church.
 

 • Eric Redmond took offense to statements made after the January 16, 2008, regular meeting by members who “voiced opposition to ‘elder leadership’ ” and shortly thereafter, he called special meetings to oust from their leadership positions and membership in the Church those expressly opposed to the governance change.
 

 • Eric Redmond, as pastor of the Church, was “to act as ‘the leader of
 
 *203
 
 worship, proclamation, administration, education, and pastoral ministries’ ” and “had no authority to conduct the civil governance of [the] Church.” Therefore, he was not authorized to call any meetings.
 

 • The individuals removed from leadership positions and excluded from Church membership received no notice, “written or otherwise,” of “the charges against them or the nature of the action to be taken against them” at the meetings.
 

 • The defendants “did not establish that those to be excluded [from membership] had become an offense to the church and to its good name by reason of immoral or unchristian conduct, or by persistent breach of his or her covenant vows, which [the] Church’s constitution and by-laws require for exclusion.”
 

 Analysis
 
 [3]
 

 Appellants contend that the trial court erred in deeming this an ecclesiastical dispute over which the court has no jurisdiction. They argue that their breach of fiduciary duty claim is purely secular because the issue presented is whether the Church, in removing certain members, electing new directors, and changing its governing documents, contravened chapter 617, Florida Statutes. Because the Church is incorporated as a nonprofit entity under chapter 617, it must abide by the statutory provisions requiring certain corporate actions to be taken in accordance with the entity’s articles of incorporation or bylaws. This, Appellants claim, the Church did not do. Appellees posit that the dispute is about church governance, i.e., whether the Church should be congregation led or elder led. It is entirely an ecclesiastical matter, they argue, and courts have no jurisdiction to intervene.
 

 We agree the underlying dispute concerns the Church’s form of governance, and the First Amendment prohibits civil courts from adjudicating such ecclesiastical matters.
 
 See Malicki v. Doe,
 
 814 So.2d 347, 356 (Fla.2002) (“[T]he First Amendment provides churches with the ‘power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.’ ”) (quoting
 
 Kedroff v. St. Nicholas Cathedral,
 
 344 U.S. 94, 116, 73 S.Ct. 143, 97 L.Ed. 120 (1952));
 
 Malichi v. Archdiocese of Miami,
 
 945 So.2d 526, 529 (Fla. 1st DCA 2006) (stating that the First Amendment “prevents secular courts from reviewing disputes requiring an analysis of ‘theological controversy, church discipline,
 
 ecclesiastical government,
 
 or the conformity of the members of the church to the standard of morals required ....’”) (quoting
 
 Watson v. Jones,
 
 80 U.S. (13 Wall.) 679, 733, 20 L.Ed. 666 (1871)). But the issue before us is whether the First Amendment prohibits judicial review of actions taken by a corporation allegedly in violation of its articles of incorporation and bylaws when the corporation is a church.
 

 “[W]hen a church-related dispute can be resolved by applying neutral principles of law without inquiry into religious doctrine and without resolving a religious controversy, the civil courts may adjudicate the dispute.”
 
 Se. Conf. Ass’n of Seventh-Day Adventists, Inc. v. Dennis,
 
 862 So.2d 842, 844 (Fla. 4th DCA 2003) (citing
 
 Jones v. Wolf,
 
 443 U.S. 595, 602-04, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979)). In
 
 Word of Life Ministry, Inc. v. Miller,
 
 778 So.2d 360, 362 (Fla. 1st DCA 2001), we
 
 *204
 
 determined that a dispute between a corporate church and its members over corporate assets and propriety of corporate dissolution involved only neutral legal principles and therefore could be judicially resolved. There the church, a non-profit corporation, sued its ministers and bookkeeper to prevent dissolution of the corporation and distribution of its assets. The defendants had taken a series of actions the church challenged, including electing new directors, amending the church’s articles of incorporation, and voting to dissolve the corporation and distribute its assets.
 
 Id.
 
 at 363-64. We determined that the essential dispute was solely over who had the right to control church property, and that the case “implicate[d] neutral legal principles only,” specifically, that “[a] corporation must act in accordance with its articles of incorporation and duly adopted by-laws.”
 
 Id.
 
 at 362, 363. For that reason, we concluded, the court could resolve the dispute without violating the First Amendment.
 
 Id.
 

 As in
 
 Word of Life,
 
 this case asks whether the Church, a corporate entity, complied with its articles of incorporation and bylaws in terminating corporate membership, electing directors, and amending corporate documents. Thus, it implicates the same neutral legal tenets. However, even where neutral law applies, secular courts must not “become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal beliefs.”
 
 Serbian E. Orthodox Diocese v. Milivojevich,
 
 426 U.S. 696, 709, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976). On this principle, Appellants’ case is distinguishable from
 
 Word of Life.
 
 First, the essential dispute in this case is not over property, as in
 
 Word of Life.
 
 Rather, the controversy is solely over how the Church should govern itself — an essentially religious matter.
 
 Cf. Milivojevich
 
 at 709 (determining that although the dispute, on its face, is about control of church property, “this case essentially involves not a church property, but a religious dispute the resolution of which under our cases is for ecclesiastical and not civil tribunals.”). Second, under the 1955 Articles, membership in the congregation automatically conveyed membership in the corporation. And the 1994 Bylaws, on which Appellants rely, detailed the procedure and grounds for terminating membership in the congregation. Consequently, any inquiry into whether the Church adhered to its bylaws in excluding members necessarily entangles the court in religious matters protected by the First Amendment.
 
 Word of Life
 
 presented a markedly different factual scenario. There “most members of the congregation were in legal contemplation strangers to the corporation,” 778 So.2d at 362, and in any event, expulsion of members from the congregation was not at issue. Thus, in
 
 Word of Life
 
 this court could review the corporation’s actions for compliance with the bylaws, without implicating church doctrine.
 
 Cf. Hemphill v. Zion Hope Primitive Baptist Church of Pensacola, Inc.,
 
 447 So.2d 976, 977 (Fla. 1st DCA 1984) (finding judicial resolution of church dispute permissible where no interpretation of church doctrine was necessary to determine if corporate church fired its pastor in accordance with articles and bylaws). Finally, it is evident from Appellants’ complaint and from the testimony taken by the trial court that exercising jurisdiction in this instance would be tantamount to “intervening on behalf of [a group] espousing particular doctrinal beliefs.” We can discern no way under the facts of this case to draw a clean line between essentially religious matters protected by the First Amendment and mat
 
 *205
 
 ters of corporate law.
 
 [4]
 

 For the foregoing reasons, we conclude the trial court correctly ruled that it lacked jurisdiction over the parties’ ecclesiastical dispute. Accordingly, we affirm the judgment on appeal.
 

 AFFIRMED.
 

 BENTON, C.J., and CLARK, J., concur.
 

 [1]
 

 . Plaintiffs are former members, officers and/or directors of the Church: Margaret A. Rosenberger; Margaret Smith; Martha Ann Weaver; Carson Roberts; Ruby Sheffield; Janice A. Nobles; Reva Phillips; Tinka Phillips; Jo Harris; Mary Alice Denton; Marietta Townsend; Janie Burnham; Faye Roberts; Jane Elholm.
 

 [2]
 

 . Defendants are the First Baptist Church of Micanopy, Inc., Wesley Jamison, Eric M. Redmond and Hayden E. Norris. Norris is currently pastor of the Church.' Redmond and Jamison preceded him in that role; they are no longer members of the Church.
 

 [3]
 

 . We review
 
 de novo
 
 the trial court’s decision that it lacks subject matter jurisdiction over the parties' dispute.
 
 See Seven Hills, Inc. v. Bentley,
 
 848 So.2d 345, 350 (Fla. 1st DCA 2003).
 

 [4]
 

 . Our 'decision here does not conflict with the supreme court’s decision in
 
 Epperson v. Myers,
 
 58 So.2d 150 (Fla.1952). In
 
 Epperson,
 
 the challenged actions were taken at meetings called, held and attended only by a particular group of members without notice to or participation by the broader church membership. The supreme court held that the trial court properly asserted jurisdiction to address "fraud, collusion or arbitrary conduct” by a "rump faction.”
 
 Id.
 
 at 152. The instant case does not present similar facts.
 
 See also Umberger v. Johns,
 
 363 So.2d 63, 65 (Fla. 1st DCA 1978) (relying on
 
 Epperson
 
 to reverse dismissal of complaint alleging that a church faction colluded to change church bylaws without adequate notice to church membership).