CORTINAS, J.
Bible Missionary Baptist Church of Miami, Inc. (the “Corporation”) was founded and incorporated as a not for profit organization under Florida Statutes chapter 617 (1973) by Reverend Cleo Albury, Jr., who served as pastor of the church and president of the Corporation from 1973 until 1999. He was replaced as pastor by Reverend Phillip F. Readon, though Rev. Al-bury retained his position as president until his death in 2009. In early February, 2010, Eugene Rice, a member of the board of directors of the Corporation, filed the Corporation’s 2010 annual report without notice to the remaining directors. The report removed four members of the board: W.C. Dillard, Edwin Henderson, Lorenzo McDowell, and Sidney White (collectively, the “Appellants”). The report additionally introduced three new directors, and appointed Rev. Readon, who had not previously been on the board, president and registered agent of the Corporation.
Once Appellants discovered what Rev. Readon and Mr. Rice (collectively, the “Appellees”) had done, protracted negotiations ensued with the hopes of resolving the dispute without resorting to litigation. When that failed, Appellants filed a complaint against Appellees alleging breach of contract, breach of fiduciary duty and fraud. In May of 2011, the trial court granted the motion to dismiss the action with prejudice filed by Appellees on the grounds that “[t]he Ecclesiastical Abstention Doctrine bars this Court from deciding the instant dispute because doing so would necessarily and excessively entangle this Court in doctrinal and/or theological issues.” We reverse.
The ecclesiastical abstention doctrine emerges from the First Amendment protections afforded to religious institutions. The Supreme Court of Florida has recognized that “the First Amendment prevents courts from resolving internal church disputes that would require adjudication of questions of religious doctrine.” Malicki v. Doe, 814 So.2d 347, 355 (Fla.2002) (internal citations omitted). In applying the doctrine, the trial court noted that “[u]n-der the ecclesiastical abstention doctrine, civil courts are prohibited from interfering with internal church disputes in order to avoid excessive government entanglement with religion, in accordance with the First Amendment.” (quoting State v. Young, 974 So.2d 601, 612-13 (Fla. 1st DCA 2008)). Appellees point in their brief to a recent *260 First District decision which found that “how the Church should govern itself’ is “an essentially religious matter.” Rosenberger v. Jamison, 72 So.3d 199, 204 (Fla. 1st DCA 2011). This Court has previously considered the doctrine and found that “[cjourts may not consider employment disputes between a religious organization and its clergy because such matters necessarily involve questions of internal church discipline, faith, and organization that are governed by ecclesiastical rule, custom, and law.” Archdiocese of Miami, Inc. v. Miñagorri, 954 So.2d 640, 640-42 (Fla. 3d DCA 2007) (internal citations omitted).
We find that the ecclesiastical abstention doctrine does not bar this suit. Plaintiffs are not categorically prohibited from ever seeking redress from the courts solely because a religious organization is somehow involved in the dispute. “[WJhen a church-related dispute can be resolved by applying neutral principles of law without inquiry into religious doctrine and without resolving religious controversy, the civil courts may adjudicate the dispute.” Se. Conf. Ass’n of Seventh-Day Adventists, Inc. v. Dennis, 862 So.2d 842, 844 (Fla. 4th DCA 2003) (citing Jones v. Wolf, 443 U.S. 595, 602-604, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979)). Appellants do not allege, in their complaint, that the Bible Baptist Church committed any wrongdoing, and do not challenge the institution’s employment practices or policies. Nothing in the record indicates that Appellants have sought judicial intervention concerning any aspect of church governance. Instead, Appellants allege that Appellees, acting without authority, attempted to remove specific board members from the organization in derogation of the requirements of section 617.0808 (Fla.Stat.2010).
Religious organizations, like any other not for profit organization, are governed by the requirements of chapter 617. See § 617.0301, Fla. Stat. (2010). Unless provisions in the by-laws of a corporation expressly adopt alternative requirements to those discussed in the statute, section 617.0808 establishes the procedures to be followed in removing board members for all not for profit corporations: “[A] director may be removed from office pursuant to procedures provided in the articles of incorporation or the bylaws, which shall provide the following, and if they do not do so, shall be deemed to include the following ...” § 617.0808(1), Fla. Stat. (2010) (emphasis added). It is undisputed that the by-laws of the church do not adopt any procedures for removing board members.[1] Because the statute unambiguously establishes procedures of uniform law, the instant dispute “can be resolved by applying neutral principles of law without inquiry into religious doctrine and without resolving a religious controversy.” Se. Conference, 862 So.2d at 844. Thus, the allegations in the complaint may be evaluated without recourse to any policy, practice, or doctrine of the church. The court is not asked to interpret religious doctrine or to evaluate church policies. The allegations at the heart of the complaint — that Appellees improperly at *261 tempted to remove members of the Board of Trustees — are entirely controlled by neutral application of section 617.0808.
This is not an instance where the court’s involvement would transgress upon the exclusive authority granted to churches under the First Amendment “to decide for themselves, free from state interference, matters of church government.” Malicki, 814 So.2d at 356 (quoting Kedroff v. St. Nicholas Cathedral, 344 U.S. 94, 116, 73 S.Ct. 143, 97 L.Ed. 120 (1952)). The church in the instant case did not decide this aspect of church governance for itself; the by-laws of the church do not address the composition of the board, the removal of board members, or any similar aspect of corporate management. Because the church in the instant case had no by-laws governing the removal of board members, chapter 617 dictates the required procedures. This Court is not faced with the inquiry prohibited in Rosenberger concerning “whether the Church adhered to its bylaws.” Rosenberger, 72 So.3d at 204. There were no bylaws with which the church may or may not have complied. See also Se. Conference, 862 So.2d at 844 (“[W]here religious organizations establish rules for their internal discipline and governance ... ‘the Constitution requires that civil courts accept their decisions as binding upon them.’ ”) (internal citations omitted).
The situation before this Court is far closer to that faced by the Florida Supreme Court in Epperson v. Myers, 58 So.2d 150 (Fla.1952). In that case, a set of trustees for a church challenged their removal by a rival group. The Supreme Court, while finding that matters of church governance are ordinarily deemed ecclesiastical and covered by the doctrine, allowed for the exception: “[W]hen there is a showing of fraud, collusion, or arbitrary conduct on the part of church authorities, the courts will interfere to protect the rights of those imposed on.” Epperson, 58 So.2d at 152. Epperson further held that “[w]hen a ‘faction’ of the church arrogates authority to itself, disrupts the organization and sets at naught well-defined rules of church order, there is no course left for those who desire their rights settled through orderly processes but resort to the courts.” Id. Significantly, the First District noted in Rosenberger that “[o]ur decision here does not conflict with the [S]upreme [C]ourt’s decision in Epperson v. Myers." Rosenberger, 72 So.3d at 205, n. 4.
Because, at this stage of the proceedings, it appears that the case may be resolved by applying neutral principles of law without inquiry into religious doctrine and without requiring the court to interpret the policies or practices of the Bible Baptist Church, the abstention doctrine does not bar this case.
Reversed and remanded.

. Article V of the church’s by-laws permit the Pastor “to temporarily remove from office any uncooperative officer pending action by the church.” Though the by-laws make use of the term "remove,” it is clear from a plain reading of the text that the temporary nature of die removal and the reference to "pending action by the church” limits the Pastor's authority to the mere suspension of officers. Procedures for the full removal of directors, by the church or by any authorized agent of the church, are not mentioned in the by-laws. As the Plaintiffs’ complaint alleges that they were removed from office, not merely suspended, adjudication of the complaint would therefore not require review of the church’s by-laws.