DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**AIDA AUGUSTE,** et al.,
Appellants,

v.

**JOHN WESLEY HYACINTHE,** et al.,
Appellees.

No. 4D21-3538

[September 7, 2022]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Keathan B. Frink, Judge; L.T. Case No. CACE 21-7464 (12).

Hugo A. Rodriguez of The Law Offices of H.A. Rodriguez, P.A., Fort Lauderdale, for appellants.

Anthony Gonzalez of Gonzalez Law Offices, P.A., Coral Gables, for appellees.

CONNER, J.

Appellants, Aida Auguste ("Aida"), Uslande Auguste ("Uslande"), Louverture Lubin, Anida Auguste-Isma, and Antonie Metellus (collectively, "Appellants"), appeal the trial court's order dismissing their complaint against Appellees, John Wesley Hyacinthe ("Hyacinthe"), Nicles Destin ("Destin"), Reynold Tibois ("Tibois"), Vilcias Alcide, and Marie Medonne Saint-Louis (collectively, "Appellees"), based on the ecclesiastical abstention doctrine. On appeal, Appellants argue that the trial court erred in dismissing their complaint, contending that the causes of action filed do not involve ecclesiastical matters, and instead, the case can be resolved by applying neutral principles of law. We agree with Appellants' contentions and reverse the trial court's dismissals regarding counts I-III of the complaint; however, we affirm the dismissal of count IV based on the ecclesiastical abstention doctrine.

*Background*

Eglise Baptiste Bethanie de Fort Lauderdale, Inc., ("the Church"), is a Baptist church founded by Aida and her late husband ("Pastor Auguste"). Pastor Auguste filed incorporation documents with the Florida Department of State in 1988. The articles of incorporation established a board of trustees to govern the Church.[1] After Pastor Auguste's death in 2014, disagreements arose, and the Church's membership divided into factions.

Appellants filed a four-count complaint against Appellees alleging multi-year disputes within the Church after Pastor Auguste's death. Appellants alleged that while the Church had bylaws, the bylaws did not govern the disputes raised in the complaint.

The complaint alleged that Hyacinthe became a director of the Church in September 2019; however, disagreements between Hyacinthe and the other directors prompted his resignation in January 2020. Because it was questionable whether Hyacinthe's resignation was effective, the board of directors and board of trustees voted to remove Hyacinthe as a director. Appellants claimed that despite Hyacinthe's removal as director, he continued to act, unauthorized, on behalf of the Church.

Appellants alleged that Hyacinthe filed annual reports with the Florida Department of State, falsely listing himself as director and pastor of the Church, falsely listing Destin and Tibois as officers of the Church, and falsely removing Aida and Uslande as officers. Appellants also alleged that Appellees held a "secret[]" meeting, with only a small portion of the Church's membership, and after, some of the Appellees executed a false document that was purportedly a resolution by the Church's board of directors, recognizing the expulsion of Aida and Uslande as directors and members of the Church. Further, Appellants alleged that all meetings held by Appellees outside of Aida and Uslande's presence were not properly noticed.

Count I alleged that Hyacinthe violated section 617.0808, Florida Statutes (2018), regarding removal of directors. Count II alleged that Tibois violated the same statute. Count III alleged that Appellees violated chapter 617 in holding secret meetings. Count IV alleged conversion against Appellees.

Appellees moved to dismiss, arguing in part that the ecclesiastical abstention doctrine prohibited the trial court from resolving the causes of

---

[1] The articles of incorporation did not create a board of directors, but at some point, a board of directors was formed in addition to the board of trustees.

action alleged in Appellants' complaint.  The trial court granted Appellees' motion after hearing, relying on our opinion in *Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Bank of America, N.A.* (*Eglise III*), 321 So. 3d 245 (Fla. 4th DCA 2021).  Appellants gave notice of appeal after the trial court denied Appellants' motion for rehearing and reconsideration.

*Appellate Analysis*

Appellants' sole argument on appeal is that the trial court erred in granting Appellees' motion to dismiss their complaint based on the ecclesiastical abstention doctrine.[2]  We review this issue de novo.  *Ransom v. Grant-Van Brocklin,* 326 So. 3d 164, 166 (Fla. 3d DCA 2021).

"The ecclesiastical abstention doctrine is rooted in the First Amendment to the United States Constitution."  *Mammon v. SCI Funeral Servs. of Fla. Inc.,* 193 So. 3d 980, 984 (Fla. 4th DCA 2016).  "The First Amendment of the United States Constitution provides that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.'"  *Napolitano v. St. Joseph Cath. Church,* 308 So. 3d 274, 277 (Fla. 5th DCA 2020) (quoting U.S. Const. amend. I).  Similarly, Florida's Religion Clauses provide that "there shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof."  *Id.* (quoting Art. I, § 3, Fla. Const.).  Both the First Amendment and Article I, section 3 of the Florida Constitution, "serve as a structural barrier against political interference with religious affairs."  *Id.*

Consequently, the ecclesiastical abstention doctrine "prevents civil courts from deciding matters that require adjudication of 'theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them.'"  *Diocese of Palm Beach, Inc. v. Gallagher,* 249 So. 3d 657, 661 (Fla. 4th DCA 2018) (quoting *Watson v. Jones,* 80 U.S. 679, 733, 13 Wall. 679, 20 L.Ed. 666 (1871)).  However, as our supreme court has recognized, "a First Amendment violation does not occur any time a case requires a court to examine church law or policies."  *Mammon,* 193 So. 3d at 985 (citing *Malicki v. Doe,* 814 So. 2d 347, 357 (Fla. 2002).

---

[2] There is case law indicating that the ecclesiastical abstention doctrine applies to hierarchical religious organizations and not congregational religious organizations, as pointed out in Judge Warner's concurring in part and dissenting in part opinion.  *See Eglise III,* 321 So. 3d at 248 (Warner, J., dissenting).  The parties do not address in the briefs whether the Church is a hierarchical or congregational, so we do not address the propriety of applying the ecclesiastical abstention doctrine in this appeal as to that issue.

Accordingly, "[t]he scope of the [ecclesiastical abstention] doctrine is not unlimited." *Flynn v. Estevez*, 221 So. 3d 1241, 1247 (Fla. 1st DCA 2017). For instance, "when a church-related dispute can be resolved by applying neutral principles of law without inquiry into religious doctrine and without resolving a religious controversy, the civil courts may adjudicate the dispute." *Se. Conf. Ass'n of Seventh-Day Adventists, Inc. v. Dennis*, 862 So. 2d 842, 844 (Fla. 4th DCA 2003); *see also Bilbrey v. Myers*, 91 So. 3d 887, 891 (Fla. 5th DCA 2012) (noting that most courts have held "the rights guaranteed by the First Amendment are not violated if the tort claims can be resolved through the application of 'neutral principles' of tort law, particularly where there is no allegation that the conduct in question was part of a sincerely held religious belief or practice"). Therefore, our supreme court has explained:

> A court thus must determine whether [a] dispute "is an ecclesiastical one about 'discipline, faith, internal organization, or ecclesiastical rule, custom or law,' or whether it is a case in which [it] should hold religious organizations liable in civil courts for 'purely secular disputes between third parties and a particular defendant, albeit a religiously affiliated organization.'"

*Malicki*, 814 So. 2d at 357 (second alteration in original) (quoting *Bell v. Presbyterian Church*, 126 F.3d 328, 331 (4th Cir. 1997)).

Appellants argue that the trial court erred in dismissing their complaint based on the ecclesiastical abstention doctrine because the trial court could have resolved their claims using neutral principals of law. Significantly, Appellees' answer brief does not address Appellants' arguments regarding the neutral principles of law approach for resolving their complaint. Instead, Appellees argue that opinions issued in previous related cases dictate affirming the trial court.

There have been three other relevant opinions issued involving lawsuits arising from the Church's schism after Pastor Auguste's death. First, in *Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Seminole Tribe of Florida* (*Eglise I*), No. 19-cv-62591, 2020 WL 43221 (S.D. Fla. Jan. 3, 2020), a faction of the Church brought claims against Aida under 18 U.S.C. § 248(a)(2), challenging Aida's control of the Church's property and exclusion of the plaintiffs from the Church's property. *Id.* at *1. However, the Southern District agreed with Aida's argument that the plaintiffs' complaint involved non-justiciable questions of internal church governance. *Id.* at *11. The court explained that "*the foundational issue*

4

*that must be resolved before addressing* the merits of the claims is whether [Aida] had the authority to exclude Plaintiffs from church property as Pastor Auguste's rightful successor. *Questions of church government* are fundamentally ecclesiastical in nature." *Id.* (emphasis added).

The Eleventh Circuit agreed with the Southern District in *Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Seminole Tribe of Florida* (*Eglise II*), 824 F. App'x 680 (11th Cir. 2020). Like the Southern District, the Eleventh Circuit disagreed with the plaintiffs that the dispute was merely a property dispute and did not involve ecclesiastical issues, because:

> *Before reaching* the plaintiffs' § 248 claim, a court would *need to determine* whether [Aida] was the rightful successor to the church's leadership and, if she was, whether [Aida] had the authority to exclude the plaintiffs from the church's property. *Answering these questions would require us to inquire into church rules, policies, and decision-making* and *questions of church governance* are manifestly ecclesiastical.

*Id.* at 683 (emphasis added).

Finally, we relied on *Eglise I* and *Eglise II* in issuing our opinion in *Eglise III*. There, the Church filed suit against two banks, alleging that the banks negligently transferred control of the Church's bank accounts to Aida. 321 So. 3d at 246. The trial court granted the Church's motion to dismiss based on the ecclesiastical abstention doctrine. *Id.* On appeal, we agreed with the trial court, noting the federal courts' opinions in *Eglise I* and *Eglise II* and holding:

> Here, although the Church's negligence claims against the [b]anks involve a question of control over bank accounts, *in order to resolve those claims the court would necessarily have to decide which faction within the Church controls the bank accounts.* The only way for the court to make this determination is for it to consider the Church's internal governance structure. "[Q]uestions of church governance are manifestly ecclesiastical." [*Eglise II*, 824 F. App'x. at 683]. Accordingly, the trial court did not err in dismissing the case for lack of subject matter jurisdiction based on the ecclesiastical abstention doctrine.

*Id.* at 246-47 (second alteration in original) (emphasis added).

However, we determine that Appellants' counts I-III in the complaint filed are very distinguishable from the counts alleged in *Eglise I*, *Eglise II*, and *Eglise III*. Unlike the previous cases, Appellants' counts I-III did not raise claims that would necessarily require the trial court to decide which faction of the Church has control or seek resolution of questions regarding the Church's governance. Instead, we conclude counts I-III raise issues of the propriety of actions of the board of trustees, board of directors, or corporate officials of a corporation under chapter 617, Florida Statutes. We agree with Appellants that the Third District's decision in *Bendross v. Readon*, 89 So. 3d 258 (Fla. 3d DCA 2012), is persuasive.

In *Bendross*, like the allegations in Appellants' complaint, after the reverend who founded and incorporated the church died, a member of the church's board of directors filed the church's annual report without notice to the remaining directors, wherein he removed four board members, added three new directors, and appointed another reverend as president and registered agent of the church. *Id.* at 259. After an unsuccessful attempt to resolve the conflict amicably between the parties, the four removed directors, the appellants in the case, filed suit against the director who filed the annual report and the appointed reverend for breach of contract, breach of fiduciary, and fraud. *Id.* However, the trial court dismissed the appellants' complaint based on the ecclesiastical abstention doctrine. *Id.*

On appeal, the Third District reversed, finding that the ecclesiastical abstention doctrine did not bar the suit, based on the neutral principles of law approach. *Id.* at 260. The district court explained that "[r]eligious organizations, like any other not for profit organization, are governed by the requirements of chapter 617," and the church's bylaws, just as Appellants allege in the instant case, did not adopt any procedures for removing board members. *Id.* Therefore, the court held:

> This is not an instance where the court's involvement would transgress upon the exclusive authority granted to churches under the First Amendment "to decide for themselves, free from state interference, matters of church government." *Malicki*, 814 So. 2d at 356 (quoting *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116, 73 S.Ct. 143, 97 L.Ed. 120 (1952)). *The church in the instant case did not decide this aspect of church governance for itself; the by-laws of the church do not address the composition of the board, the removal of board members, or any similar aspect of corporate management.* Because the church in the instant case had no by-laws governing the removal of board members, chapter 617

6

> dictates the required procedures. . . . There were no bylaws
> with which the church may or may not have complied.

*Id.* at 261 (emphasis added). For the same reasons discussed in *Bendross*, we agree with Appellants that the trial court erred in dismissing Appellants' counts I-III based on the ecclesiastical abstention doctrine.

Conversely, we determine that the trial court did not err in dismissing Appellants' count IV – raising a cause of action for conversion against Appellees. In count IV, Appellants alleged that they "are entitled to possession *and control* of the Church . . . books and its property," but that Appellees were wrongfully asserting control. (emphasis added). Therefore, just as in *Eglise I*, *Eglise II*, and *Eglise III*, Appellants' count IV would necessarily require the trial court to determine which faction controlled the Church, a fact made clear based on the plain language of Appellants' allegation in count IV.

We also point out that our decision in this case is based on the record before us at this stage of the proceedings below. We recognize that after further proceedings, the landscape of the case could change. Thus, we issue this opinion without prejudice to Appellees to raise the ecclesiastical abstention doctrine in an answer and any proper ensuing motion. *See Quintana v. People's Tr. Ins. Co.*, 335 So. 3d 131, 133 (Fla. 4th DCA 2022).

*Conclusion*

For the foregoing reasons, we hold that the trial court erred in dismissing counts I-III of Appellants' complaint based on the ecclesiastical abstention doctrine, because resolution of those counts, at least at the stage of the pleadings below, require only the application of neutral principles of law. However, we agree with the trial court that the ecclesiastical abstention doctrine bars count IV of Appellants' complaint, because resolution of that count would necessarily require the trial court to first determine who controlled the Church. Therefore, we affirm in part, reverse in part, and remand for further proceedings.

*Affirmed in part, reversed in part, remanded for further proceedings.*

KLINGENSMITH, C.J., concurs.
WARNER, J., concurs in part and dissents in part with opinion.

WARNER, J., concurring in part and dissenting in part.

I concur with the majority that the issues with respect to counts I-III

7

do not require application of the ecclesiastical abstention doctrine, both for the reasons stated in the majority opinion and because this church is not a member of a hierarchical religious organization. As I explained in my dissent in *Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Bank of America, N.A.* (*Eglise III*), 321 So. 3d 245, 247–51 (Fla. 4th DCA 2021), the doctrine applies to hierarchical religious organizations, not churches with a congregational form of government. Thus, I would not apply the doctrine to Count IV and would reverse as to that count also.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***