DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ORNA MAMMON,**
Appellant,

v.

**SCI FUNERAL SERVICES OF FLORIDA INC.,** a Florida corporation
d/b/a **MENORAH GARDENS AND FUNERAL CHAPELS,** and
**SERVICE CORPORATION INTERNATIONAL, INC.,**
a Texas corporation,
Appellees.

No. 4D15-1788

[May 25, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Carol-Lisa Phillips, Judge; L.T. Case No. CACE 14-005841 (25).

Steven H. Osber and Emily A. Thomas of Kelley Kronenberg, P.A., Fort Lauderdale, for appellant.

Ted C. Craig and Anastasia Protopapadakis of GrayRobinson, P.A., Miami, for appellees.

GERBER, J.

The plaintiff widow appeals from the circuit court's final order dismissing her complaint against the defendant cemetery companies due to lack of subject matter jurisdiction. The widow alleged that the defendants violated both the Florida Funeral, Cemetery, and Consumer Services Act and the Florida Deceptive and Unfair Trade Practices Act by mispresenting to her that they would bury her husband in accordance with "Jewish burial customs and traditions." The defendants moved to dismiss the complaint with prejudice for lack of subject matter jurisdiction because the parties disputed what constituted "Jewish burial customs and traditions," and if the court was to determine what constituted "Jewish burial customs and traditions," then the court would violate the ecclesiastical abstention doctrine. The circuit court granted the motion to dismiss on that ground. We agree with the dismissal. Thus, we affirm.

We present this opinion in five parts:

1. the widow's complaint;
2. the defendants' motion to dismiss for lack of subject matter jurisdiction;
3. the parties' arguments on appeal;
4. our examination of the ecclesiastical abstention doctrine; and
5. our application of the ecclesiastical abstention doctrine to this case.

## 1. The Widow's Complaint

The widow's complaint alleged, in pertinent part, as follows.

Her husband had been battling terminal cancer. His medical providers advised her to prepare for his funeral and burial. Both she and her husband were devout Jews. Accordingly, she and her husband desired to be buried in accordance with "Jewish burial customs and traditions."

She considered entrusting her husband's burial to the defendants because they represented to the public that they provide cemetery services in accordance with "Jewish burial customs and traditions." For example, the defendants' website contained the following representation:

> As one of the Dignity Memorial network's Jewish providers, we are honored to serve Jewish families by providing funeral or cemetery services *in accordance with Jewish custom.* We understand the needs of today's Jewish families because we share their history and experiences and their values. . . . Jewish funeral tradition pays tribute to . . . the principle of Kavod Ha-Met, or Honoring the Dead, which teaches that it is of utmost importance to treat the body with respect and care from the time of death until the burial is complete . . . . Serving you *in accordance with the traditions of your Jewish faith* is an honor for us. With knowledge of Orthodox, Conservative, and Reform Judaism, our Dignity Memorial providers are experienced in providing the Jewish funeral services and customs that are important to you and your family.

(emphasis added; brackets omitted).

The widow met with the defendants' representative at one of its cemeteries known as "Menorah Gardens." The widow expressed her desire that she wanted her husband to be buried in accordance with "Jewish burial customs and traditions."

2

The defendants' representative confirmed that the defendants understood "Jewish burial customs and traditions," and assured the widow that her husband would be buried in accordance with "Jewish burial customs and traditions."

The widow also observed physical characteristics of the cemetery's grounds which, when viewed in conjunction with the defendants' advertisements and their representative's oral statements, further enhanced the widow's expectation that the defendants would provide cemetery services in accordance with "Jewish burial customs and traditions." These physical characteristics included:

- a large Israeli flag flying high above the cemetery's only point of ingress and egress;
- the cemetery's sections are named after historic Jewish prophets, kings, matriarchs, and leaders; and
- the cemetery's grounds contain large stone monuments of menorahs, the Star of David, and other Jewish symbols.

The widow, placing her trust and confidence in the defendants' advertisements and their representative's oral statements, purchased burial plots at Menorah Gardens for her husband and herself.

A few days later, her husband died. The day after his death, he was buried in the purchased plot at Menorah Gardens.

One month after the burial, the widow visited her husband's grave. The widow observed that the defendants allowed non-Jews to be buried within the same section as their burial plots. In particular, a pastor of a different religious faith was buried only yards away from their burial plots.

According to the widow, burying non-Jews in the same section as Jews violated "Jewish burial customs and traditions."

Based on the foregoing, the widow filed a complaint against the defendants, alleging four counts:

(I)     fraudulent, deceptive, and misleading sales practices in violation of the Florida Funeral, Cemetery, and Consumer Services Act, section 497.152(9)(e)-(f), Florida Statutes (2013) (the "Cemetery Services Act");

3

(II) fraudulent, deceptive, and misleading advertising in violation of the Cemetery Services Act's related Florida Administrative Code Rule 69K-29.001 (2013);

(III) a per se violation of the Florida Deceptive and Unfair Trade Practices Act, section 501.201, et seq., Florida Statutes (2013) ("FDUTPA"); and

(IV) intentional or reckless infliction of emotional distress.

Specifically, the widow alleged that the defendants' actions violated "Jewish burial customs and traditions" for the following reason:

> According to Jewish customs, it is a well-established tenet of burial customs to be buried on consecrated or sanctified grounds. Customarily, the burial ground is consecrated with a special ceremony and is to be utilized for the exclusive use as a Jewish cemetery. It is to be separated from unconsecrated ground using a wall, fence, or a solid hedge, using a separate entrance. According to Jewish customs, every Jew is entitled to be buried in a Jewish cemetery, a fundamental right of Jewish burial practices. In short, Defendants knowingly desecrated [the husband's] burial ground by [their] actions . . . .

*2. The Defendants' Motion to Dismiss for*
*Lack of Subject Matter Jurisdiction*

The defendants answered the complaint, and filed a separate motion to dismiss for lack of subject matter jurisdiction. In their motion to dismiss, the defendants argued that resolution of the widow's claims "would require [the] Court to weigh, interpret, and enforce purported tenets of the Jewish religion in violation of the First Amendment" and "this First Amendment prohibition operates to divest a court of subject matter jurisdiction."

The defendants filed two pieces of evidence in support of their motion to dismiss for lack of subject matter jurisdiction. *See Steiner Transocean Ltd. v. Efremova*, 109 So. 3d 871, 873 (Fla. 3d DCA 2013) (although as a general rule, when considering a motion to dismiss, a court is limited to the four corners of the complaint and any attachments, "a court is permitted to consider evidence outside the four corners of the complaint where the motion to dismiss challenges subject matter jurisdiction") (footnotes with citations omitted).

4

First, the defendants relied upon the following excerpts from their deposition of the widow:

Q. Tell me what the effect of the pastor being buried at Menorah Gardens is on your husband.

A. . . . [I]t's not in accordance with the Jewish law. This is a Jewish cemetery.

Q. What Jewish law?

A. That no non-Jewish person should be buried in Menorah Gardens.

Q. Where does that law come from?

A. Our Jewish religion. I don't know one Jewish cemetery in Israel that has . . . non-Jewish people. A Jewish cemetery is a Jewish cemetery. A Catholic cemetery is a Catholic cemetery. A pet cemetery is a pet cemetery.

. . . .

Q. Okay. Why is it offensive to you to have non-Jewish people buried next to your husband?

A. Because I follow my Jewish faith correctly. . . .

. . . .

Q. You keep referring to this Jewish law regarding burials. What is the law? Where does it come from?

A. It comes from the law when Moses walked down with the Ten Commandments. We follow the Jewish law. The laws of Abraham. We follow the Old Testament.

. . . .

Q. Is it your belief that the Old Testament states that a non-Jewish person may not be buried near a Jewish person?

A. I can't answer that. I am not so knowledgeable. *You should ask the rabbi.* . . . [B]ut I follow the Old Testament.

5

Q. But you're not sure what the Old Testament says, correct?

A. Well, I know a lot about the Old Testament, but I can't tell you specifics. . . . *I'm not a rabbi.* . . .

(emphasis added).

Second, the defendants relied upon two papers demonstrating that, within the Jewish rabbinical community, a theological debate exists regarding whether Jews and non-Jews may be buried in the same cemetery. One paper, entitled, "Burial of a Non Jewish Spouse and Children," discusses conflicting rabbinical interpretations concerning whether Jews and non-Jews may be buried in the same cemetery, and specifically, whether a non-Jewish spouse or children of an interfaith marriage may be buried in a Jewish cemetery. The other paper, entitled "Peaceful Paths: Burial of Non-Jews in a Jewish Cemetery Following a Common Disaster," acknowledges "the traditional ban on burial together of Jews and non-Jews," but recognizes "special circumstances in which such burial may be permitted."

At the hearing on the defendants' motion to dismiss, the widow's counsel argued:

> Although this [case] involves religious principles, Your Honor, it's a straightforward tort. It's a fraudulent misrepresentation, and that's how this court needs to view this case; the promise that [her husband] would be buried not only in accordance with Jewish customs, but in compliance with Orthodox practices and that the Menorah Gardens did not live up to that by engaging in the practice of burying the pastor in the same section that [her husband] was buried.
>
> . . . You're going to have experts that are going to give opinions about Jewish law. The defense will have theirs. The plaintiffs will have theirs just like any other that involves expert testimony, whether it's medical malpractice, whether it's accounting practices, construction practices. It's a determination based on the experts.

After the hearing, the circuit court entered a final order granting with prejudice the defendants' motion to dismiss. The court reasoned:

The Complaint and Plaintiff's deposition are based upon an interpretation of alleged faith based burial requirements and whether the Defendant[s] failed to comport with Jewish burial customs and traditions.

### 3. The Parties' Arguments on Appeal

This appeal followed. Our review is de novo. *See Bogdanoff v. Broken Sound Club, Inc.,* 154 So. 3d 410, 411 (Fla. 4th DCA 2014) (an appellate court reviews de novo a motion to dismiss challenging subject matter jurisdiction).

The widow primarily argues the circuit court erred in finding that the disposition of her complaint would require "an interpretation of alleged faith based burial requirements and whether the [defendants] failed to comport with Jewish burial customs and traditions." The widow does not dispute there is a theological debate concerning whether Jews and non-Jews may be buried in the same cemetery. However, according to the widow, the question before the circuit court was simply whether the defendants' representations were fraudulent, deceptive and/or misleading.

The defendants respond that to answer the widow's question as framed, however, the circuit court preliminarily would have to determine whether the defendants violated "Jewish burial customs and traditions." According to the defendants, because of the recognized theological debate on that preliminary issue, the ecclesiastical abstention doctrine prohibits any court determination of that issue.

### 4. The Ecclesiastical Abstention Doctrine

The ecclesiastical abstention doctrine is rooted in the First Amendment to the United States Constitution. *See* U.S. Const. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."). The Florida Supreme Court has described the ecclesiastical abstention doctrine as follows:

> [T]he First Amendment prevents courts from resolving internal church disputes that would require adjudication of questions of religious doctrine. For example, the [United States] Supreme Court has stated that "it is not within 'the judicial function and judicial competence'" of civil courts to determine which of two competing interpretations of scripture are correct. *United States v. Lee,* 455 U.S. 252, 256 . . . (1982).

7

Instead, civil courts must defer to the interpretations of religious doctrine made by the "highest ecclesiastical tribunal." *Serbian E. Orthodox Diocese* [*for U.S.A. & Canada v. Milivojevich*]*,* 426 U.S. [696,] 709 . . . [(1976)]. Thus, the First Amendment provides churches with the "power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff* [*v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*]*,* 344 U.S. [94,] 116 . . . [(1952)].

*Malicki v. Doe*, 814 So. 2d 347, 355-56 (Fla. 2002) (footnote and other internal citations omitted).

However, the Florida Supreme Court recognized that a First Amendment violation does not occur any time a case requires a court to examine church law or policies:

A court thus must determine whether the dispute is an ecclesiastical one about "discipline, faith, internal organization, or ecclesiastical rule, custom or law," or whether it is a case in which [it] should hold religious organizations liable in civil courts for purely secular disputes between third parties and a particular defendant, albeit a religiously affiliated organization.

*Id.* at 357 (citations and other internal quotation marks omitted). *See also Favalora v. Sidaway*, 995 So. 2d 1133, 1135 (Fla. 4th DCA 2008) ("Although courts are required to accept a religious body's pronouncements of its internal laws and cannot adjudicate matters purely within the religious organization's authority, courts are not forbidden from examining a religious organization's internal laws or structure, especially where the inquiry is relevant to a third party's purely secular tort or contract claims.") (citation omitted).

### 5. *Our Application of the Ecclesiastical Abstention Doctrine to This Case*

Applying the Florida Supreme Court's description of the ecclesiastical abstention doctrine to this case, we conclude that although the widow's complaint is framed in counts alleging deceptive and fraudulent misrepresentations regarding "Jewish burial customs and traditions," the disposition of those counts cannot be accomplished without first determining, as a matter of fact, what constitutes "Jewish burial customs and traditions." Thus, the dispute here, at its core, is "an ecclesiastical

one about [an] 'ecclesiastical rule, custom or law,'" precluding judicial review under the First Amendment. *Malicki*, 814 So. 3d at 357.

Our conclusion is consistent with two cases from other jurisdictions where a court dismissed a private individual's action against a secular entity because the dispute required an ecclesiastical determination: *Wallace v. Conagra Foods, Inc.*, 920 F. Supp. 2d 995 (D. Minn. 2013), *vacated on other grounds*, 747 F.3d 1025 (8th Cir. 2014); and *Abdelhak v. Jewish Press, Inc.*, 985 A.2d 197 (N.J. Super Ct. App. Div. 2009). We address each case in turn.

In *Wallace*, a federal district court dismissed for lack of subject matter jurisdiction a case brought by a group of Jewish consumers alleging that the defendant manufacturer misrepresented its food products as "100% Kosher" when such products were not produced in the manner required to be considered Kosher. 920 F. Supp. 2d at 996. The court reasoned: "[T]he determination of whether a product is in fact 'kosher' [is] intrinsically religious in nature. Any judicial inquiry as to whether Defendant misrepresented that its [products] are '100% kosher' . . . would necessarily intrude upon rabbinical religious autonomy." *Id.* at 998.

In *Abdelhak*, a state appellate court affirmed the dismissal for lack of subject matter jurisdiction of a case brought by an Orthodox Jewish doctor who claimed a news publication and others made defamatory statements about his alleged noncompliance with Orthodox Jewish religious requirements concerning his wife. 985 A.2d at 200-02. The plaintiff had refused to grant his wife an Orthodox Jewish consent to divorce, called a *Get*. *Id.* at 200-01. However, according to the plaintiff, the defendants falsely stated he had defied a rabbinical court's contempt order, known as a *Seruv*, requiring him to provide a *Get* to his wife. *Id.* at 201-02. In affirming the trial court's dismissal, the appellate court held:

> [T]o evaluate whether plaintiff's reputation suffered any injury, a jury would, of necessity, be required to determine how a *Seruv* Listing is viewed within the Orthodox Jewish community and whether an Orthodox Jew would be offended by another's refusal to provide a *Get*. To make that determination, a jury would be obligated to consider the intricacies of Jewish doctrine. Such consideration would require a jury to delve deeply into the importance of giving a *Get* and the disdain heaped on a man who refuses one. . . . Unless a jury evaluates these deeply religious questions – that are limited to the practices and doctrine of the insular Orthodox Jewish community – the jury would be unable to

9

> perform the threshold task of deciding whether the false *Seruv*
> Listing was defamatory at all.

*Id.* at 207.

Here, as in *Wallace* and *Abdelhak*, to evaluate whether the defendants made deceptive and fraudulent misrepresentations regarding "Jewish burial customs and traditions," the circuit court would, by necessity, be required to determine what constitutes "Jewish burial customs and traditions." To make that determination, the circuit court would be obligated to consider "the intricacies of Jewish doctrine," *Abdelhak*, 985 A.2d at 207, or matters which are "intrinsically religious in nature" and "would necessarily intrude upon rabbinical religious autonomy," *Wallace*, 920 F. Supp. 2d at 998. Because the First Amendment's ecclesiastical abstention doctrine precludes the circuit court from evaluating these deeply religious questions, the court would be unable to perform its ultimate task of deciding whether the defendants made deceptive and fraudulent misrepresentations regarding "Jewish burial customs and traditions." Thus, the First Amendment's ecclesiastical abstention doctrine precludes the court from having subject matter jurisdiction here.

The widow conceded as much in both her deposition and her argument to the circuit court. In her deposition, after repeatedly being asked to identify what Jewish law prohibited non-Jews from being buried with Jews, the widow ultimately answered: "You should ask the rabbi. . . . I am not a rabbi." In her argument to the court, the widow ultimately argued: "*You're going to have experts that are going to give opinions about Jewish law. . . . [J]ust like any other that involves expert testimony, whether it's medical malpractice, whether it's accounting practices, construction practices. It's a determination based on the experts.*" (emphasis added). However, unlike a medical malpractice, accounting, or construction case, the First Amendment's ecclesiastical abstention doctrine precludes the court from relying upon experts to make such a determination in this case.

The case upon which the widow primarily relies, *Malicki*, is distinguishable. In *Malicki*, the plaintiffs brought various claims against a priest, his church, and the regional Archdiocese for damages resulting from the priest sexually assaulting the plaintiffs on church premises. 814 So. 2d at 352. The Florida Supreme Court rejected the argument that the case should be dismissed pursuant to the ecclesiastical abstention doctrine. *Id.* at 351. The court reasoned:

10

In this case, the Church Defendants do not claim that the underlying acts of its priest in committing sexual assault and battery was governed by sincerely held religious beliefs or practices. Nor do they claim that the reason they failed to exercise control over [the priest] was because of sincerely held religious beliefs or practices. Therefore, it appears that the Free Exercise Clause is not implicated in this case because the conduct sought to be regulated[,] that is, the Church Defendants' alleged negligence in hiring and supervision[,] is not rooted in religious belief. Moreover, even assuming an incidental effect of burdening a particular religious practice, the [plaintiffs'] cause of action for negligent hiring and supervision is not barred because it is based on neutral application of principles of tort law.

*Id.* at 360-61 (citation and internal quotation marks omitted).

Unlike *Malicki*, the widow's cause of action for violation of the Cemetery Services Act and FDUTPA is based on more than a neutral application of those statutes. The First Amendment is implicated because the conduct sought to be regulated, that is, the defendants' alleged misrepresentations regarding "Jewish burial customs and traditions," is rooted in religious beliefs about what constitutes "Jewish burial customs and traditions."

*Conclusion*

A court's determination of whether the cemetery companies violated both the Cemetery Services Act and FDUTPA, by mispresenting to the widow that it would bury her husband in accordance with "Jewish burial customs and traditions," would require the court first to determine what constituted "Jewish burial customs and traditions." That preliminary determination would violate the ecclesiastical abstention doctrine. Based on the foregoing, we affirm the circuit court's final order dismissing with prejudice the widow's complaint against the defendant cemetery companies for lack of subject matter jurisdiction.

*Affirmed.*

STEVENSON and LEVINE, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

11